Boone County v. Jones.

## Boone County v. Jones et al.

1. **Bond**: SURETY: REGULARITY OF ELECTION. After a public officer has served through his term, neither he nor his sureties can escape liability upon his bond on the ground of the illegality of his election.

2. ——: ——: APPROVAL OF BOND. The fact that the board of supervisors have not indorsed their approval upon the bond of a county officer will not affect its validity, the statute requiring such approval being merely directory.

3. ——: ——: COUNTY TREASURER. Doubts having arisen as to the legal right of the incumbent to hold the office of county treasurer, a new election was held at which he was again chosen, and under such election gave a new bond. In an action upon such bond it was held that, aside from the general principles of law, it was valid under sections 303 and 773 of the Code, conferring upon boards of supervisors the power of requiring additional bonds from county officers in their discretion.

4. ——: ——: EVIDENCE. The testimony of the members of the board of supervisors was competent to prove a statement made by the retiring officer, as to the amount of money which should have been in the treasury.

5. ——: ——: ——. The sureties upon the bond of a public officer are not liable for defalcations occurring before the term covered by their bond, but the reports and settlements made by a county treasurer, in compliance with section 746 of the Code, are conclusive upon such officer and his sureties, and can only be impeached by showing mistakes therein.

6. ——: ——. The sureties upon the bond of a public officer can make no defense that could not be made by their principal.

*Appeal from Greene Circuit Court.*

SATURDAY, OCTOBER 23.

At the general election in the year 1873, the defendant Geo. E. Jones was elected county treasurer of Boone county, for two years from January, 1874. He served the full term of the office to which he was elected. At the general election in 1875, one J. W. Snell was elected to said office, for the term commencing in January, 1876. After the said election, and before the first Monday in January, 1876, the said Snell departed this life without having qualified, or in any manner

entered upon the duties of said office.   A vacancy was thereby created, and on the 3d day of January, 1876, the defendant Jones executed a bond to said county as a holding over officer, and otherwise qualified and continued as the incumbent of said office, until the expiration of the term on the first Monday in January, 1878.   At the general election in 1876 the electors of said county again voted and balloted for candidates to fill the vacancy in said office, for the residue of said term to which said Snell had been elected, and the said Geo. E. Jones was again declared duly elected, and thereafter, and on the 17th day of November, 1876, the said Jones, and the other defendants as his sureties, executed a treasurer's bond to said county, conditioned as follows:

"The condition of the above obligation is this:  Whereas, the said Geo. E. Jones was, on the 1st Monday in January, A. D. 1876, the incumbent of the office of treasurer of Boone county, Iowa, and whereas, J. W. Snell, who had been elected to said office at the general election in Boone county, Iowa, held in October, 1875, failed to qualify in said office, and whereas, said Geo. E. Jones did on the——day of January, 1876, appear before the board of supervisors of said county and duly qualified in said office for the term of two years from and after the first Monday of January, 1876, by giving a bond approved by said board and taking and subscribing the oath of office, which bond still remains on file in the office of the auditor of said county, and under said qualification he is still · acting in said office; and whereas, since then doubts have arisen as to the length of term to be filled by said Jones so holding over, and whereas, at the general election held in Boone county, Iowa, in November, 1876, 3,461 votes were cast for the office of treasurer of said county, to fill a vacancy, and said Geo. E. Jones received a majority of eighty-nine votes of all the votes so cast at said election, and said Jones desiring to put said matter at rest desires to qualify under said election, but does the same and the same is allowed and permitted by said board with the distinct understanding that this qual-

ification shall in no way affect the former qualification, and this bond shall in no way affect his former bond, and shall not release or discharge any of the sureties thereon.

"Now, if the said Geo. E. Jones shall render a true account of his office and of the doings therein, to the proper authorities, when required thereby or by law, and shall promptly pay to the person or officer entitled thereto all money which may come into his hands by virtue of his said office, and shall faithfully account for all balances of money remaining in his hands at the termination of his office, and shall hereinafter exercise all reasonable diligence and care in the preservation and lawful disposal of all money, books, papers and securities or other property appertaining to his said office, and deliver them to his successor or to any person authorized to receive the same, and if he shall faithfully and impartially, without fear, favor, fraud or oppression discharge all other duties now or hereinafter required of his office by law, then this bond to be void, otherwise in full force. Signed the 17th day of November, 1876."

This action was brought upon this bond, and it was claimed that upon his final settlement with the county in January, 1878, the said Jones proved to be a defaulter in a large amount of money, for which judgment was prayed against him and the other defendants as his sureties.

The answers of the defendants in substance denied that Jones was a defaulter in any amount, and denied the validity of said election and bond, averred that said bond was never approved by the board of supervisors of said county, and denied that Jones ever held the office under said pretended election, and averred that he held the full term for which said Snell was elected as a holding over officer, and said Jones averred that there were two other actions pending against him for the same cause of action embraced in this suit.

There was a trial by jury, and a verdict and judgment for the plaintiff, for $13,598. Defendants appeal.

*Maxwell & Witter* and *Kidder & Crooks*, for appellants.

*Webb & Dyer* and *Phillips, Goode & Phillips*, for appellee.

ROTHROCK, J.—I. The action is important, both as to the amount in controversy and as to the principles involved.

1. BOND: surety: regularity of election.

The questions contained in the record have been ably presented, both by printed and oral arguments, and we believe we have given to the case that thorough and painstaking consideration which it seems to demand.

When the bond was offered in evidence, objection was made thereto upon the grounds that it was not a valid instrument, because the election therein recited was void, not being authorized by law, and because there was no vacancy at that time existing, and because it appeared from the pleading that there was at the time this bond was executed another legal bond of the defendant Jones, under which he performed the duties of said office, and upon which alone he is liable. It was further objected that said bond had never been approved as provided by law, and could not be approved because there was no certificate attached to the bond showing that Jones had accounted for or produced the funds of the county before that time under his control. These objections were overruled. The same questions were presented in certain instructions which the defendants asked to be given to the jury, and the instructions were refused.

It appears in evidence that the bond was filed and recorded in the auditor's office, and a day or two after the bond was filed a certificate of election, approved by the chairman of the board of supervisors, was delivered to said Jones. The bond was indorsed "Approved Nov. 18, 1876." These words were in the handwriting of the chairman of the board. There was no other record made of the approval of the bond.

We think it is not material to inquire whether the defend-

ant Jones was entitled to hold over for the full term for which Snell was elected; nor to determine whether his election to fill a vacancy was regular, and authorized by law. We are united in the opinion that Jones and his sureties are concluded by the recitals in this bond, and cannot be heard to dispute the regularity of the election. Under the recitals of this bond he was, as between the parties thereto, *de facto* the treasurer of the county. If public officers are allowed to escape the consequences of malfeasance in office after the full term of their election has expired, because of an alleged illegal election, it would be a bolder and more glaring instance of allowing a man to take advantage of his own wrong than any case that has come under our observation.

In regard to the want of a record of the approval of the bond, and the want of such certificate indorsed thereon as

2. ——:——: the statute requires, we think the defendants are
approval of
bond. also concluded by executing and delivering the bond to the board. These provisions of the statute are directory merely. They require certain duties to be performed by the officers therein named, and their failure to perform them in no manner affects the officer or his sureties. Laches are not imputable to the public authorities, and the failure of the supervisors to perform their duties in matters not inhering in the bond will not discharge the sureties. *U. S. v. Kirkpatrick*, 9 Wheaton, 720; *Same v. Van Zandt*, 11 Id., 184; *Dox v. Postmaster-General*, 1 Pet., 318.

Their liability is not made to depend upon these acts of the officers of the county. The fact that Jones had qualified and given bond as an officer holding over can make no difference. He became a candidate at the election to fill the vacancy, accepted its results, and gave his bond, and accepted his certificate of election, and he and his sureties should not be allowed to say that he was holding the office by another tenure, and under another bond.

But without further elaboration of this question we think

we are required to hold this bond valid by reason of the stat-
ute. Sub. 10 of Sec. 303 of the Code provides
that the board of supervisors have "power to re-
quire any county officer to make a report under oath to them
on any subject connected with the duties of his office, and to
require any such officer to give such bonds, or additional
bonds, as shall be reasonable and necessary for the faithful
performance of their several duties    *    *    * ."

Section 773 provides that "any officer or board who has
the approval of another officer's bond, when of opinion that
the public security requires it, upon giving ten days' notice
to show cause to the contrary, may require him to give such
additional security, by a new bond, as may be deemed requis-
ite, within a reasonable time to be prescribed."

These provisions of the statute give a wide discretion in
the matter of requiring official bonds. The supervisors are
invested with power to determine when additional bonds are
necessary, and in what amount. In this case there were
doubts as to the right of Jones to hold over for the full term:
an election was held, and the bond in suit taken in the belief
that the public security required it.. The defendant Jones
gave the bond voluntarily, and it would be a strange perver-
sion of justice to hold that the bond is void, because there
was no occasion for an election and additional bond. As well
might Jones and his sureties, upon an additional bond given
because it was believed by the board that the sureties upon
his first bond were insufficient, insist that the additional bond
was void because the original sureties were possessed of suffi-
cient property to fully protect the public. Such an issue
would not be made, much less entertained, in any court.

II.   At the time Jones made his final settlement with the
board, and when he surrendered the books and effects of the
office to his successor, he took the money on hand
from the safe, counted it, and handed it over.   It
amounted to $4,726.91. The plaintiff introduced the mem-
bers of the board as witnesses, and they were permitted,

against defendants' objection, to state what Jones said at that time as to the amount of money there should have been on hand.

The argument of counsel for the appellants is that the declarations of Jones are not binding upon the sureties; but liability upon the bond must be fixed by the books of the treasurer, and the records of the board of supervisors, showing the amount of the defalcation, a settlement with Jones, and a demand for the deficiency.

We know of no rule which requires liability upon this bond to be made matter of record. The fact to be ascertained is, did Jones pay over to his successor all the money with which he was properly chargeable? If he did not, he and his sureties are liable upon the bond.

No objection was made by Jones as to the manner in which his accounts were adjusted by the board. He paid over what money he had without objection, and only ceased to count out the whole amount because it was not there. We assume this to be true, and that there was a deficiency, because it is not seriously disputed, and the record does not contain all the evidence introduced upon that question, it having been omitted by agreement of counsel.

III. The bond in suit was approved on the 18th day of November, 1876. The law requires the board of supervisors at their regular meetings in January and June of each year to make a full and complete settlement with the county treasurer. No record was made of such settlement in January, 1877; that is, the proceedings of the board make no reference to such settlement, and we are aware of no statute requiring such record, unless it be that it should be included in the record of the proceedings. But the books of the treasurer were introduced in evidence, and although none of their contents are contained in the abstract, it seems to be conceded that they show a settlement—that is, the accounts for the year 1876 were closed up by Jones charging himself with the amounts to balance, and the balances were.

by him carried forward into his accounts as treasurer for the year 1877, as so much cash on hand. That there was a settlement at that time with Jones, and an accounting with all of the members of the board present, and a balancing of the books, appears in evidence. Upon that settlement it appears that Jones was not a defaulter—his account showed that he had on hand all the money he was required to have. It must be presumed the members of the board did their duty by counting the money which his report showed should be on hand.

.· The defendants offered to prove from the books that Jones could not have been a defaulter in any sum at the time his bond was given by showing that after that time he paid out more money than he received, and offered to prove that on the 18th day of November, 1876, when the bond was given, and before that, there were deficits in the treasurer's accounts. They also offered to prove how much money there was in the treasurer's office on that day. All this evidence was excluded on the objection of the plaintiff, upon the ground that the treasurer and his sureties were bound by the settlement made in 1877, and the settlements after that as shown from his books, and that they were thereby estopped from showing that the defalcation existed before the bond was given. The defendants also asked that several instructions be given to the jury to the effect that the defendants were only liable upon the bond for such defalcations as occurred after the bond was given, which instructions were refused.

These rulings of the court are claimed to be erroneous, and the question as to their correctness is the main point in controversy in the case. Counsel for appellant cite a large number of authorities to the effect that where an official bond is not retrospective the sureties thereto are only bound for the public money in the hands of the officer when the bond was executed, and for that which subsequently came into his possession, and cannot be held for past derelictions of duty by their principal. That the proposition is correct can admit

of no question.   It has been repeatedly so held by this court. *Mahaska County v. Ingalls*, 16 Iowa, 81; *Bessinger v. Dickerson*, 20 Id., 261; *Warren County v. Ward*, 21 Id., 84; *School District v. McDonald*, 39 Id., 564.

But the question we are called upon to determine in this case is the admissibility of the offered evidence to show the fact as to when the defalcation or embezzlement occurred. In *State v. Grammier*, 29 Ind., 531, it is said:   "It is true that the sureties of a public officer in the absence of special agreement are only liable for a defalcation of their principal during the term of office covered by the bond, but what shall be received as proof of such defalcation is quite another question."   In determining the question as to whether the officer and his sureties should be estopped from contradicting the reports of the treasurer and the settlements made by him with the board of supervisors we are controlled largely by the statute in force in this State requiring such settlements to be made.   Before citing the statute, however, it may be proper to say that upon a careful examination of the authorities cited by counsel for appellants we have found no case exactly in point.   They are for the most part cases which determine the general proposition that a surety is not liable for derelictions of his principal before the date of the bond, and the question of estoppel based upon settlements with the officer does not appear to have been under consideration.   We have seen that the law requires the settlements to be made with the treasurer in January and June of each year.   Suppose that he should refuse to make such settlement, or it should appear by an examination of his books and the counting of his cash that he was a defaulter; he would be liable to be removed from office.   Code, § 746.   He would also be liable to prosecution for the crime of embezzlement.   Now suppose at the time of settlement he should show by his books and by the money in the vaults of the treasury that he was not a defaulter, has the county the right to rely upon such showing?   Or can he by false statements of account, or by bor-

rowing money temporarily to be counted in settlement, mis-
lead the board of supervisors and avoid proceedings against
him, or possibly the demand for an additional bond, and then
when sued upon his bond show that his settlement was a
fraud upon the county, and that the defalcation actually
occurred during a former term? We are clearly of the opin-
ion that he cannot.   By allowing such contradictions of these
settlements courts would open the doors to escape from lia-
bility upon almost every official bond.   By shifting the defal-
cation back to a former term, the statute of limitations would
in most cases preclude all hope of recovery unless when a
defaulting treasurer who has held successive terms should be
sued upon all his bonds, and then the shifting process could
well be applied to each case.   We think the question has
every element of estoppel, and that to hold such evidence
competent would not only be to allow the treasurer to take
advantage of a wrong by which he deceived the county to its
injury, but would be contrary to public policy.

In *McCabe v. Rainey*, 32 Ind., 309, it is well said that
" a party will be concluded from denying the truth of his own
admissions, which were intended to influence the conduct of
another, and did influence it, when such denial will operate to
the injury of the latter."

In *Baker v. Preston*, 1 Gilmer (Va.), 235, a proceeding
against a defaulting treasurer and his sureties, it was held
that the books kept by the treasurer were conclusive evidence
of the balance actually in the treasury at any given time, both
against the treasurer and his sureties without being pleaded
as an estoppel, so as to charge them with balances carried for-
ward from year to year.   See, also, *State ex rel., etc., v. Grau-
near*, 29 Ind., where the last above case is cited with ap-
proval; *Mosley v. The Town of Metamora*, 78 Ill., 394,
and *Gage v. The City of Chicago*, 2 Bradwell (Ill.), 332.   It
is true that, in the last above cited cases, the settlement or
statement made by the officer was made at or before the dates
of the bonds, but we think they are in principle the same as

the case at bar, because the statute requires these settlements to be made at stated periods. They are conclusive that up to the time they were made no defalcation existed. It will, of course, be understood that the rule we here announce would not preclude the officer and his sureties from showing, in a proper case, that there were mistakes in his books and settlements; but no such case is presented in this record.

IV. The sureties can make no defense that could not be made by their principal. As is said in Patterson's Appeal, c. —: ——. 48 P. St., 345: "The measure of his responsibility is the measure of theirs," and in *McCabe v. Rainy,* 32 Ind., 309, it is said "any act of the principal which estops him from setting up a defense personal to himself, operates equally against his surety." See, also, *Seaver v. Young,* 16 Vermont, 658, and *Charles v. Hopkins,* 14 Iowa, 471.

We have determined all the questions made by counsel for appellants, necessary to a determination of the case. When the court below determined, as we think, correctly, that this was a valid and legal bond, and that the parties thereto were bound by the settlement and squaring up of the treasurer's books in January, 1877, the case was reduced to the single question as to the amount of the embezzlement. That this was correctly found by the jury, does not seem to be seriously questioned.

AFFIRMED.

### ON REHEARING.

ADAMS, CH. J.—The appellants in their petition for a rehearing claim that the court made a mistake in the facts relied upon by the appellee, as constituting the ground of estoppel. We have accordingly re-examined the abstract, and have reached a conclusion not essentially different from that reached in the original opinion. The undisputed evidence is, as we understand it, that on the first of January, 1877, Jones was debited with the amount which the previous receipts exceeded the previous payments. Such debit then

showed the amount which ought to be in the treasury. The precise language in which the debit entry was made is not shown to us. In the absence of such showing we should not, perhaps, be justified in assuming that the entry expressly purported to show that the money was in the treasury. On account of this fact, we have had some doubt as to the effect which should be given to the entry as a ground of estoppel.

In *Gage v. The City of Chicago*, 2 Bradwell, 332, a case strongly relied upon by the appellee, the entries expressly purported to show the "balance in the treasury.". We have come to the conclusion, however, that the case at bar is not essentially different. The theory upon which the estoppel is based is that the natural effect of the entry was to mislead the board of supervisors, and lull them into security. Now, inasmuch as the balance carried forward and debited to the treasurer ought to be in the treasury, and would be in the treasury in the absence of defalcation, the natural inference to be drawn from the entry would be that the money was there. We do not say that it was not the duty of the board of supervisors, at their semi-annual settlement, to count the money, and ascertain whether the amount called for by the books was in the treasury. We think such was their duty. Possibly they counted the money and found it there. If so the sureties are liable. But conceding that the supervisors were guilty of laches in this respect, we do not think the sureties can escape liability by reason thereof. They knew that their undertaking, *prima facie*, was that their principal would account for all balances carried forward, and that the tendency of such entries was to mislead the supervisors, and lull them into a false security, if the money called for by the entries was by reason of previous defalcations not in fact in the treasury. They should, therefore, have counted the money themselves, and if they found that their undertaking appeared from the books to be greater than they were willing to acknowledge it to be, they should, we think, forthwith, certainly before any settlement with the board, have notified it of such

fact. The treasurer's books should at all times show the exact condition of the treasury. If in the case at bar there was a shortage at the beginning of 1877, the debit balance carried forward should have shown how much thereof was shortage. But the debit balance it appears was carried forward in such a way as to conceal the shortage, if there was any, and the sureties, apparently at least, acquiesced in the account. The former opinion is adhered to, and the judgment is

. Affirmed.