## STATE v. HUTCHINSON

1. **Criminal Law:** EMBEZZLEMENT: STATUTE OF LIMITATIONS: EVI-DENCE: ESTOPPEL. The defendant, a former county treasurer, was on trial for embezzling the public funds. The State had introduced his settlement sheet, made some 27 months prior to the finding of the indictment, which appeared correct on its face, and from which it appeared that defendant was not then in arrears, and which, taken with other evidence, tended to show that the embezzlement had been committed within three years prior to the finding of the indictment. The defendant then, to avail himself of the statute of limitations, offered to prove that he had made his settlement with the board of supervisors by the use of worthless and spurious certificates of deposit, instead of cash, and that whatever money was converted to his own use was so converted more than three years before the indictment was presented. This testimony was excluded. *Held* that the testimony should have been admitted, on the ground that a defendant in a *criminal* prosecution is not estopped from proving the actual fact in dispute, notwithstanding any admission or confession he may have made to the contrary. That the settlement would have been an estoppel in a *civil* action, see *Boone County v. Jones,* 54 Iowa, 699; *Webster County v. Hutchinson,* 9 N. W. Rep., 901, and 12 N. W. Rep., 534.

*Appeal from Webster District Court.*

THURSDAY, MARCH 22.

THE defendant was indicted for the crime of embezzlement. He was tried and convicted, and now appeals to this court.

*Hubbard, Clark & Dawley,* for appellant.

*Smith McPherson, Attorney-general,* for the State.

ROTHROCK, J.—I.   The defendant was Treasurer of Webster county for ten years, commencing in January, 1868, and ending in January, 1878. In April, 1878, the indictment in this case was returned against him, in which he was charged with embezzling about $48,000 of the public money which came into his hands as such treasurer.

The State introduced in evidence the settlement sheet

which was made at the commencement of the defendant's last term of office, in January, 1876, with his certificate thereon that it was a true statement of cash then in his hands as treasurer. The account or settlement sheet embraced the transactions of the office for the six months next preceding the settlement, and upon its face it appeared to be correct, and the defendant was thereby shown not to be in arrears. The State then followed up this showing by an exhibit of the subsequent semi-annual settlement sheets, and then from the books of the office for the last six months of the last term ending in January, 1878. Upon this basis it appeared that at some time during the last term of office the defendant became short in his cash some $46,800.

We do not understand that the defendant contended upon the trial that he was not short in his cash, and largely in arrears, when he went out of office in January, 1878. But he sought to show that this shortage occured during his prior terms, more than three years before the indictment was found, and that, therefore, the prosecution was barred by the statute of limitations. To make this proof, the defendant offered evidence to the effect that, at the settlement made in January, 1876, and at those previously and subsequently made, but a small amount of cash was produced at each settlement, and that the cash balance, which should have been actually in his hands in money, were largely made up of bank certificates of deposit and other vouchers. He offered to show that certificates of deposit and other evidences of debt had been made use of by him in his settlement, more than three years prior to the finding of the indictment. He further offered to prove that *he had no funds in the banks which issued the certificates.* In other words, he offered to show and prove that he made his settlement with the board of supervisors by the use of worthless and spurious certificates of deposit, instead of cash, and that whatever money was converted to his own use was so converted more than three years before the indictment was presented. This evidence was objected to by the State,

and the objection was sustained. This ruling, as we infer from the objections made to the evidence, was based upon the idea that the defendant was criminally bound by the settlement sheets, and by his certificates, that he had the cash actually on hand at the time the several settlements were made.

In *Boone County v. Jones*, 54 Iowa, 699, it was held that a county treasurer, and the sureties on his bond, were bound by a settlement and accounting made according to law, and where, at such settlement, for aught that appeared, the cash which should have been on hand was produced by the treasurer, such settlement could not be impeached by showing that the defalcation complained of previously existed. In other words, it was held that, where a treasurer produces the funds which should be is his hands, at a settlement, the settlement is conclusive, and the treasurer and his sureties cannot be permitted to prove that the treasurer deceived the board of supervisors in such settlement, by producing money not belonging to the office nor to the treasurer. That was a civil action to recover upon the bond of the treasurer for an alleged defalcation. In *Webster County v. Hutchinson*, 9 N. W. Rep., 901, and 12 N. W. Rep., 534[*], which was a civil action to recover on the defendant's bond for the same alleged defalcation for which the defendant was indicted in this case, it appeared that the settlement was made with the treasurer without producing the money which should have been on hand, but by producing certificates of deposits from banks, and other evidences of indebtedness. It was held that this constituted no settlement, because the law required the cash to be produced. It was further held that, as the board of supervisors were not deceived by the production of the money, it was allowable for the sureties upon the defendant's bond to show that the defalcation existed in fact prior to the settlement in question. It was also held, in that case, that the defendant was concluded, by the settlement, upon the very obvious ground that he

---

[*]This case was decided, after rehearing, June 7, 1882, but does not appear in the official Reports covering that date. It will appear in a supplement to this volume.

could not be allowed to take advantage of his own wrong and fraud, to the injury of the public, even though the board of supervisors knew that the settlement was not made in compliance with the law.

We are now required to determine whether or not the above rules, which are applicable to civil liability upon a treasurer's bond, should be held to obtain in a criminal prosecution for embezzlement. We are clearly of the opinion that they should not. If the claim of the defendant be true, he was guilty of embezzlement as early as 1872. He offered to prove that, from that time forward, he made his settlements, not with money, but largely with certificates of deposit, and with other promises to pay. This was wholly unauthorized by law. Even if the defendant had actually deposited money with the banks, and the certificates represented the deposits, such a disposition of the funds in his hands was unauthorized, *Lowry v. Polk County*, 51 Iowa, 50. But when the defendant offered to prove that he had no deposits in the banks, he, in effect, offered to show that he had converted the money which had been in his hands to his own use. At least, this would have been the logical inference, in the absence of proof that he had lost it, or that it had been stolen, or the like. The fact that at each settlement he failed to produce the money, was a sufficient failure to account for the funds in his hands, to constitute the crime of embezzlement, in the absence of exculpatory proof.

We think the defendant should have been allowed to show, if he could, that no defalcation took place within three years next before the finding of the indictment. We know of no rule that estops a defendant in a criminal prosecution from proving the actual fact in dispute, notwithstanding any admission or confession he may have made to the contrary. Conclusive presumptions and estoppels have no place in the criminal law in establishing the body of the crime charged. The statement and certificate showing that the cash was actually on hand and produced at the settlement in 1876, amounted to

no more than an implied confession that the defalcation took place after that time, and to deny to the defendant the right to dispute the confession thus made is, in our opinion, fundamentally wrong.

II.   There are other questions in this case which are argued by counsel.  They pertain to the manner of obtaining the jury, and the empaneling the jury in the alleged absence of any counsel for the defendant, and other objections, which we need not discuss, inasmuch as the alleged errors will not likely arise upon a re-trial.  In view of a new trial, however, it may not be improper to say that, in our opinion, the demand made by the county auditor (if a demand was necessary) for the payment of the alleged shortage, was a sufficient demand, in view of the authority given to him by the board of supervisors.

For the error first above discussed the judgment of the District Court will be

REVERSED.