CASE 27.—ACTION BY T. D. CATLIN AGAINST THE UNITED
    STATES FIDELITY & GUARANTY COMPANY AND
    OTHERS.—February 25, 1910.

## Catlin v. U. S. Fidelity & Guaranty Co:, &c:

Appeal from Marion Circuit Court.

McKENZIE Moss, Judge.

Judgment against plaintiff and he appeals.—Reversed.

1.  Executors and Administrators—Sale of Lands—Settlement of
    Estate.—No more of the lands owned by decedent at his
    death than is necessary to pay the balance of his debts,
    after exhaustion of the personalty, can be sold in a suit
    only to settle his estate.
2.  Action—Joinder.—There may be joined with a suit to settle
    a decedent's estate the cause of action under Civ. Code
    Prac. Sec. 490, subsec. 2, for sale of the residue of the land
    after paying the debts, on the ground that such residue
    was indivisible among the parties entitled to it without
    materially impairing its value.
3.  Deposits in Court—Default of Commissioners—Liability on
    Bond.—Civ. Code Prac. Sec. 490, subsec. 2, provides that
    real estate owned by more than one may be sold by order
    of court in an action brought by either owner, though one
    of them be an infant, if the property cannot be divided with-
    out materially impairing its value. Section 493 provides
    that, subject to the provision of section 497, the guardian
    of an infant must before the sale is ordered execute a bond
    to the infant to account for its share; and that, if the
    bond be not given, any order of sale, and any sale under
    such an order, shall be void; and section 497 provides that
    in an action under section 490, subsec. 2, the share of an
    infant shall not be paid by the purchaser, but shall remain
    a lien on the land till the infant becomes. of age, or its
    guardian executes bond as required by section 493. Held,
    that sale having been made, as it could be, without a bond
    being given by an infant's guardian, in which case the in-

fant's share is to remain a lien on the land, and not be collected till such a bond is given or the infant comes of age, and the share of the infant having been paid by the purchaser to the commissioner and receiver of the court on the void order of the court, so that such share of the purchase money still belonged to the purchaser, and was held to his use by the commissioner, and it having then been loaned out on an order of the court the commissioner in thereafter collecting it on an order of the court to collect and hold it till further order was acting solely in virtue of his office, and not merely under color of office, so that, he having failed, the surety on his official bond was liable to the purchaser.

HUGH P. COOPER for appellant.

JOHN McCHORD for appellees.

OPINION OF THE COURT BY JUDGE O'REAR—Reversing.

W. D. Catlin died intestate in Marion county, this state, in 1892, leaving among his heirs at law two infant children. The widow and adult heirs brought a suit in equity in the Marion circuit court against the infants to obtain a sale of the real estate descended from the intestate, because it was indivisible without materially impairing its value. A decree of sale was entered. Appellant, P. D. Catlin, became the purchaser of the land at the sale, and executed bonds for the purchase price. The sale was confirmed. Upon an adjustment by the court of the rights of the parties it was decreed that the interest of the infant defendants in the land was $519.14. The purchaser paid all the purchase price except the part going to the infants. Subsequently, on motion of a guardian of the infants, an order was entered directing the master commissioner and the receiver of the court, E. L. England, to collect from the pur-

vol. 137—14

chaser the remaining bonds, the share due the infants, and to loan out the money, which was done. Subsequently there was an attempt by the nonresident guardian of the infants to get an order transferring their estate to the foreign jurisdiction. Owing to a failure to execute sufficient bond here for the purpose, the order was not entered.

In the meantime, and in anticipation of the order of transfer, the commissioner and receiver had been ordered to collect, and had collected, the money which had been loaned out under the previous order of the court. Thereafter the commissioner and receiver failed, and made default of payment of the money. A suit was brought in the Marion circuit court by the guardian of the infants in this state, Hundley, to have the infants' interest in the proceeds of the sale made a charge upon the land, or to recover from the commissioner and the surety on his bond the sum which had gone into the commissioner's hands for the infants.

From the judgment in that case an appeal was prosecuted to this court, where it was decided (1) that the proceedings under which the infants' real estate had been sold was an action brought under the provisions of subsection 2, sec. 490, of the Civil Code of Practice, a condition of which proceedings was (section 493) that the guardian of the infants should execute a bond before entry of the judgment of sale, to the effect that the guardian would faithfully discharge his duties as such, and account for and pay and deliver to the infants all money or property due or belonging to the infants when required; (2) that by section 497 of the Civil Code of Practice that, until the bond required by section 493 was given, the share of the infants remained a lien on the land un-

til the infants became of age, "and shall not be paid
by the purchasers"; (3) that the order of the circuit
court directing the collection of the infants' share of
the purchase money from the purchaser before the
bond required by section 493 was executed was void;
(4) that, as the commissioner had not the right
therefore to collect the money, it remained a lien on
the land until the infants arrived at 21 years of age,
or until the bond required by section 493 was exe-
cuted; (5) the guardian, Hundley, having before he
brought his suit executed the bond required by sec-
tion 493, he had the right to collect the purchase
money due his wards from the purchaser, and ad-
judged an enforcement of the lien on the land; (6)
that, as the act of the commissioner in collecting the
money from the purchaser was void, he acted not in
virtue of his office, and his surety was not liable for
his defalcation. See Commonwealth v. Catlin, etc.,
129 Ky. 493, 112 S. W. 665, 33 Ky. Law Rep. 1049.

On a second appeal of the case it was held that, al-
though the judgment of sale failed to expressly re-
serve a lien on the land in behalf of the infants, the
statute reserved it for them. The judgment enforc-
ing the lien in behalf of the infants was affirmed.
Catlin et al. v. Commonwealth, 119 S. W. 769. This
suit was then brought by the purchaser, P. D. Cat-
lin, against the sureties upon the bonds of the com-
missioner and receiver, England, to recover the sum
collected by the receiver from the purchaser on the
sale bonds which had been adjudged to remain a lien
on the land. All the proceedings in the case were set
out and relied on as showing a breach of the cove-
nants of his bond by the commissioner. The cove-
nants of the bond are: "That said Edward L. Eng-
land will faithfully discharge every duty of said of-

fice and pay over in due time to the proper persons
any money received by him as commissioner and re-
ceiver.'' The circuit court dismissed appellant's pe-
tition, deeming that the money had not come into the
hands of the commissioner and receiver in virtue of
his office, and that, therefore, his sureties were not
answerable for it. From that judgment, this appeal
is prosecuted.

Some question is made by appellant whether the
first action mentioned was instituted under section
490, subsec. 2, of the Civil Code of Practice, and an
effort was made in this case to show that there was
included in that cause an accounting of the personal
estate of the decedent also. It is true there was an
apparent settlement of the decedent's estate in that
proceeding. And such may have been one of the
purposes of the suit. Still it was not competent for
the court in a settlement case alone to have sold any
more of the lands descended than was necessary to
pay the balance of decedent's debts after the per-
sonalty had been exhausted. Gill v. Gilvin's Heirs,
4 Metc., 197. But it was not improper to join in a
suit to settle the decedent's estate the cause of action
under section 490, subsec. 2, Civ. Code Prac., for the
sale of the residue of the land after paying the debts,
on the ground that such residue was indivisible with-
out materially impairing its value. Gill v. Gilvin,
supra; Elliott v. Fowler, 112 Ky. 376, 65 S. W. 849,
23 Ky. Law Rep. 1676. The allegations of the pe-
tition in the original case were strictly pertinent to
the proceeding under section 490, subsec. 2, Civ. Code
Prac., and had no relevancy to the cause for the set-
tlement of the estate by the sale of enough of its
realty to pay its debts, if that had been all that was
involved. Besides, the precise question here—i. e.,

whether the sale was under section 490, subsec. 2, Civ. Code Prac.—was presented and decided in Commonwealth v. Catlin, 112 S. W. 665, 33 Ky. Law Rep. 1049, 129 Ky. 493, and Catlin v. Commonwealth 119 S. W. 769. Section 490 of the Civil Code of Practice authorizes the sale of real estate in an action brought for that purpose where (1) the share of each owner is worth less than $100; or (2) if the estate be in possession and can not be divided without materially impairing its value. Section 493, as stated, requires the bond of the guardian of an infant to be executed before the judgment of sale.

But that section is expressly made subject to section 497, which allows the sale, but requires the infant's share to be retained as a lien on the land until the bond is paid, or until the infant arrives at maturity. Section 493, subsec. 3, provides: "If the bond be not given, any order of sale, and any sale or conveyance made under such order, shall be absolutely void and of no effect." Now, as section 497 by clear implication allows the sale to be made before the bond is given, the third subsection of 493 is rendered that, if the bond be not given, the lien shall be retained on the land for the infant's share until the bond is given, or until the infant arrives at age, and the collection of the bond before one of those events will be void. Such is the fair import of the two sections read together, and such is the view gathered from the opinion in Commonwealth v. Catlin, supra. Thereon it was held in the last-named case that not only did the infants' interest remain a lien on the land, but that they had no right to the purchase money which the purchaser had paid to the commissioner and receiver. To have held otherwise would have put it in the pow-

er of the courts, or of the parties, to ignore these careful and important provisions made for the conservation of the infants' real estate. It was on that ground that England and the surety on his bond were held not liable to the infants for the money.

But a different question arises on this appeal. It is shown that the purchaser paid the money due to the infants into the hands of the commissioner and receiver upon the order of the court. That order was admittedly void. The money, then, still belonged to Catlin the purchaser, and it was held to his use by the commissioner. It would have been within the competency of the court in that proceeding and by summary rule to have required the commissioner to pay back the money to Catlin, from whom it had been wrongfully coerced. The court always has the inherent power, if acting seasonably, to correct its own errors, although it may not have jurisdiction to do anything else in the case. Instead of ordering the money paid back to Catlin, it was ordered to be loaned out by the commissioner and receiver and was loaned out. The money was thus constructively in the pocket of the court. It still had the power, as well as was under the duty, to repay the money to Catlin. Instead, it directed the commissioner and receiver to collect it and hold it until the further order of the court. If the purpose of the court had been to then repay the money to P. D. Catlin, and had ordered it collected by the receiver and brought into court for that purpose, there would appear but little reason to doubt it was within the competency of the court to so order, and that the receiver in acting under the order would be acting solely in virtue of his office.

To illustrate the proposition further by another side view of the question: Suppose the court had in the first instance ordered the purchaser to pay the money over to the guardian, and it had been paid as ordered before the bond required by the statute had been executed. Undoubtedly the order would have been void. Seeing the error, suppose the court had then ordered the money paid back into court, so that it might be restored to the purchaser, placing him in status quo, and had ordered the receiver to bring the money into court. The order directing the receiver to fetch in the money would have been valid, and if the receiver had collected it, under the order, but had subsequently squandered it, we opine there would be little hesitation in holding that his act in collecting the money was official and legal, and that he would hold the money within the terms of his bond. The doctrine does not obtain in this state that the surety on an official bond is held for acts done by the official under color of office. It is only where his act is in virtue of office that the surety is bound. Whaley v. Commonwealth, 110 Ky. 154, 61 S. W. 35, 23 Ky. Law Rep. 1292; U. S. Fidelity & T. Co. v. Board of Education, 80 S. W. 1191, 26 Ky. Law Rep. 246; Greenwell v. Commonwealth, 78 Ky. 322; Dawson v. Levy, 83 Ky. 55; Somerset v. Banking Co., 169 Ky. 549, 60 S. W. 5, 22 Ky. Law Rep. 1129; Commonwealth, for use v. U. S. Fidelity, etc., Co., 89 S. W. 251, 28 Ky. Law Rep. 362.

If the act of England had been merely under color of office, in collecting the money after it had been loaned out by the court's order, his surety would not be bound under the authorities in this state. But it was more than that. It was an official act, under warrant of legal power and authority, was virtute

officii.  Being such, his default was a breach of his official bond.  We find that our views are fully sustained in the opinion of the Circuit Court of Appeals, Fourth Circuit, in Baltimore B. & L. Ass'n v. Alderson, 99 Fed. 489, 39 C. C. A. 609.

Judgment reversed, and cause remanded for proceedings not inconsistent herewith.