INDEPENDENT SCHOOL DISTRICT OF PORTSMOUTH, IOWA, Appellant, v. PETER HERKENRATH and W. J. COUGHLIN, Appellees.

**School Officers:** OFFICIAL BONDS: SETTLEMENT: LIABILITY OF SURETIES. Where a school treasurer about to succeed himself in office makes a settlement with the board as provided by statute, producing in some tangible form the money which he should have on hand, the sureties on his new bond are conclusively bound thereby, and are estopped from pleading or proving that the funds so exhibited were

·borrowed or otherwise temporarily or fraudulently procured and never in fact went into the public treasury; but where the money was not produced in any form and the board accepted a mere book account or personal statement of the treasurer that he had the funds in his possession the liability of the sureties on the bond is *prima facie* only, and they will be released if it is fairly established that the shortage originated during the prior term.

*Appeals from Shelby District Court.*—HON. E. B. WOODRUFF, Judge.

WEDNESDAY, MAY 8, 1912.

ACTIONS to recover moneys alleged to be due on a school district treasurer's bond.  Judgment for defendants, and plaintiff appeals.—*Affirmed.*

*H. V. Battey* and *Fremont Benjamin,* for appellant.

*Byers & Byers,* for appellees.

WEAVER, J.—C. S. Scroggin, having been treasurer of the plaintiff school district for several years in succession, was re-elected to that position in March, 1908.  On July 2, 1908, he qualified for that position by filing his bond in the penal sum of $2,500, with the defendants in this action as his sureties thereon.  During his service as treasurer, Scroggin was cashier of the State Bank of Portsmouth, in which he kept two deposit accounts; one being in his official name as treasurer, and the other a personal account.  The evidence tends to show that at the time the bond in question was filed and the business of the preceding year closed Scroggin did not appear before the board of directors, and did not produce or submit to the examination of the board the public moneys which were or should have been in his hands, either in cash, drafts, checks, or other representatives of money.  One of the directors testifies that at

the meeting of the board on July 2, 1908, "the treasurer's books were there." He explains the presence of the books by saying: "I brought them there. They were laid on my desk in the store at my place of business. Scroggin left them." It does not appear when or for what purpose the books were so left. At that time, Scroggin's account as kept on his official record, showed a balance of money on hand of $1,533.06. The only record reference to a settlement between the treasurer and the board is contained in the minutes of said meeting, and reads as follows: "Moved by Tracy and seconded by Nash that we approve the books of the treasurer and secretary with a balance of $1,106.08 teachers' fund and $415.98 contingent fund and $11.00 school-house fund on hand. Carried. Moved by Nash and seconded by Tracy that we accept the bond of Treasurer Scroggin. Carried." On January 25th following said board meeting, Scroggin committed suicide, and an examination of the bank showed that at the time of his death he was a defaulter to an amount in excess of $10,000; and that such defalcation extended back over a period of several years. It also appeared that during all that period he had been insolvent. His account, as treasurer, with the bank did not correspond with his official record; and it seems reasonably certain that at the date of the bond in suit he had absorbed or in some way dissipated the entire trust fund. At least one check of $300 appears under date of December 31, 1907, drawn by himself as treasurer, payable to his own order, and stamped paid on that day. On that day, he canceled his personal overdraft at the bank by a deposit of $360. During the time from the date of the bond in suit until Scroggin's death, he paid out for the district, upon warrants duly issued, more money by several hundred dollars than was received by him for the district during the same period. The treasurer's deposit account in the bank as it was left by him showed a balance in his favor of $511.76, which has been paid to the school district by the

bank, or by the sureties on the bond of the cashier given to the bank. To recover the remainder appearing to be due on Scroggin's account, as shown by the book kept between the treasurer and the school district, this action was brought. The defendants, sureties upon the bond of July 2, 1908, deny said claim, and deny that they are in any manner liable to the plaintiff on said bond for Scroggin's failure, if any there was, to properly account for the moneys alleged to have been received by him. A jury being waived, the issues were tried to the court, resulting in a judgment for the defendants.

It will be seen from the foregoing statement that, the treasurer or the bank having fully paid and accounted to the school district for an amount more than equal to the moneys received by said treasurer after the date of the bond, the single matter of contention left to be settled is whether the sureties on said bond are liable for the unpaid balance of the sum which was or should have been in the treasury on July 2, 1908. It is the position of the appellees that the defalcation of the treasurer had already occurred long before said bond was given; that he then had no moneys of the district on hand; that none was produced or exhibited to the board of directors, as required by law; that no settlement was in fact had or made between him and said board as the law provides, before accepting said bond, and that it conclusively and affirmatively appears that at the date of the bond the treasurer did not have a dollar left of the funds which had theretofore come into his possession; and that, except as they had been properly paid out, the entire sum had then been squandered or embezzled. On the other hand, the appellant contends that the books show due settlement between the treasurer and the district before the bond was filed, which settlement disclosed the alleged balance to be in the treasurer's hands, and that appellees, as sureties upon his bond, can not be heard to deny their liability therefor.

The question of liability upon a re-elected treasurer's bond for defalcation occurring in a preceding term is not a new one in this state. The bond is not retrospective in terms, but undertakes that the principal will duly pay or account for "all money which may come into his hands by virtue of his office." Upon such a bond, it was held, in *Mahaska County v. Ingalls,* 16 Iowa, 81, that the sureties of a treasurer "would not be bound for his past derelictions of duty or misconduct." This was reaffirmed in *Warren v. Ward,* 21 Iowa, 84. In *School District v. McDonald,* 39 Iowa, 564, the authorities were again reviewed, and the rule stated "that, if money has been received prior to the execution of the bond on which suit is brought, and the money has been used by the principal to his own use, or so disposed of by him that he does not have it on hand, either in the bank or otherwise, this constitutes a dereliction of duty, and that for such dereliction the sureties on his official bond, subsequently executed, are not liable, unless the bond is retrospective in language, so as to include such prior derelictions. . . . The undertaking of the sureties is in effect to be responsible for all moneys received by their principal during his term of office, and not for those received prior thereto and not in his hands when they became sureties." Later it was held that, where an officer, charged with the custody of public funds, is re-elected and gives a new bond, the sureties thereon are *prima facie* responsible for the balance with which he was properly chargeable at the close of his previous term. *Dist. Tp. v. McCord,* 54 Iowa, 346.

In *Boone County v. Jones,* 54 Iowa, 707, where the sureties upon the new bond were held liable, language was employed which, if given literal effect, would lend support to the doctrine that the balances shown by the treasurer's books to be on hand at the close of the prior year are conclusive, both upon him and upon his sureties, of the fact that such balances were then in the treasury, and that the

sureties upon the new bond are, as a matter of law, liable therefor. That decision was explained, and to some extent limited to its peculiar facts, in *Webster Co. v. Hutchinson,* 60 Iowa, 721. It was there said that the opinion in the *Jones case* "was based upon the principle that, if, by showing up and producing the funds, the treasurer misled the board by producing money which neither belonged to himself nor to the county, he and his sureties were estopped by the settlement from showing that it was not correct, because the board acted upon what appeared to be a fair statement." After thus distinguishing and limiting the precedent, the court then proceeds to hold that, where no settlement is made by the treasurer, as required by law, and the board counts or allows as cash that which is in no proper sense money, such board is derelict in duty in not requiring the treasurer to produce the funds, or at least in not ascertaining the real value of the substitutes offered therefor; and the sureties upon his bond are not estopped from showing, if they are able so to do, that the shortage accrued in the prior term of office. See, also, *State v. Hutchinson,* 60 Iowa, 480.

In *District v. Morris,* 91 Iowa, 198, the subject again came under consideration, and the *Jones* case again distinguished from cases where no settlement has been made, as required by law, at the close of the treasurer's prior term. The rule of *Township v. McCord,* 54 Iowa, 346, was there approved to the effect that, where such settlement was not had and the funds produced, the liability of the new bond for such balances is *prima facie* only; and it is competent for the sureties to show, in their defense, that the shortages occurred before the bond was given. The most recent review of the authorities by this court is found in *District v. Hubbard,* 110 Iowa, 58. There it appeared that the treasurer, instead of exhibiting the money to the board of directors, displayed certificates of deposit and other similar items; and, while conceding that paper of this character,

which would have been paid in cash, if then presented to the banks, might properly be treated as a sufficient exhibition of the funds, it was held that whether the paper was in fact of this character and equivalent to the money thereby represented was for the jury to decide. In the discussion, it is said: "but the surety can not be held liable for funds not produced at such settlement, and which were appropriated by the treasurer during some previous term."

Reducing the rule to be extracted from these precedents to its briefest terms, it may be said that, where the treasurer, who is about to succeed himself in office, makes a settlement with the board as by statute provided, producing in some tangible form the money which he should have on hand, the sureties on his new bond are conclusively bound thereby; and they will be estopped from pleading or proving that the funds so exhibited were borrowed or otherwise temporarily or fraudulently procured, and never in fact went into the public treasury. But, where the money is not produced in any form, and the board, charged by law with making the settlement, accepts a mere book account or personal statement of the treasurer that he has the funds in his possession, then the liability on the bond is *prima facie* only; and the sureties will be relieved, if it be fairly established that the shortage originated during a prior term.

Accepting this as the law upon which this case must turn, the judgment of the district court can not be disturbed. The issue is at law, and, jury having been waived, the finding of the court has the force and effect of a jury verdict. We can not say that it is unsupported by the evidence. On the contrary, we think no other conclusion could have reasonably been arrived at.

There is no prejudicial error in the record, and the judgment below is *affirmed*.