## Head's Administratrix et al. v. Commonwealth, for Use and Benefit of Dawson et al.

## Same v. Commonwealth, for Use and Benefit of Cassady et al.

## Same v. Commonwealth, for Use and Benefit of Sellers et al.

(Decided June 1, 1934.)

688

BURWELL K. MARSHALL, Jr., and R. F. PEAK, and D. E. WOOLDRIDGE for appellants.

ROBERT T. CROWE and J. BALLARD CLARK for appellees.

OPINION OF THE COURT BY HOBSON, COMMISSIONER— Affirming in part and reversing in part.

J. T. Yeager was master commissioner of the Oldham circuit court from February 24, 1910, until he died on December 27, 1927. After his death W. L. Dawson was appointed master commissioner, and these three actions were brought to recover funds held by Yeager as master commissioner and not accounted for.

1. The first action relates to the La Grange common school district fund. Many years ago David Shaw devised to the La Grange common school district $5,000. The money was placed in the hands of the master com-

missioner to lend out and pay the district the interest. In 1895 another fund in the settlement of the estate of S. E. De Haven was added to this. The commissioner made a partial report of the common school fund in 1909, and T. C. Trigg, who succeeded the commissioner then in office, receipted to him for cash in the fund, amounting to $1,421.25. Trigg died in February, 1910, and Yeager was appointed to succeed him. He filed a report in May, 1911, in which he showed that he had the common school fund of $9,526.87, in cash and securities. He made a like report to the court every year from 1911 to 1925. Yeager kept a ledger as commissioner in which he entered the debits and credits of this fund. This book was turned over to W. L. Dawson after he qualified, and it showed that Yeager at his death had $5,600 of the school fund in investments and $3,826.87 in cash, in addition to a hundred dollar payment made by Jeff Bryant, which he had failed to enter on the account. The action was brought to recover on his bonds for the cash not on hand and some investments not turned over, in all amounting to $4,378.28, for which judgment was given on the bonds, including the sureties in any bond executed after 1910.

2. A tract of land was duly sold for the division of the proceeds, under an order of the Oldham circuit court entered at the October term, 1917. The sale was confirmed on November 19, 1917. The land brought $30,000. It was adjudged by the court that the widow, Sallie Cassady, should receive the income from one-fifth of the proceeds of the estate, the income to be paid to her during her lifetime and then at her death to certain children. J. T. Yeager, the master commissioner, was ordered to lend out the money and executed the order. The commissioner failed to pay certain interest on the fund and failed to pay the principal of the fund, and judgment was entered on his bonds for $6,150.72.

3. On May 8, 1923, in an equity action brought for this purpose, the land of certain infant wards of Henrietta Sellers was sold for reinvestment of the proceeds. The sale was duly confirmed by the court, and on November 26, 1923, the purchase money, amounting to $3,932, was paid to J. T. Yager, the master commissioner, pursuant to the judgment, and after paying cost and expenses there was left in his hands $3,578.17. The bond was payable to the master commissioner. He was ordered to lend out the money and the fund was not

690

paid to his successor. Judgment was rendered on the bonds for $3,696.17, which includes some interest.

The commissioner executed bond when he qualified; he executed a renewal bond annually; he was reappointed in 1915, and executed a new bond, also executed renewal bonds annually. He was reappointed in 1919 and executed a new bond and renewal bonds annually. He was reappointed in 1923 and executed a new bond and renewal bonds annually as before. In October, 1927, he was reappointed and executed a new bond. See Ky. Stats. sec. 392.

The sureties of Yeager, as commissioner, in the bond executed in May, 1918, were W. D. Clore, P. S. Head, C. H. Sneed, and J. Wood Yeager. Sneed did not sign the new bond executed in 1919, but it was signed by the other three sureties. All four signed the new bond executed in 1920, 1921, 1922, and 1923. Wood Yeager did not sign the bond executed in 1924, but it was signed by the other three. J. H. Bowling signed the bond in 1925 in addition to the other three who signed the bond in 1924. In 1926 the bond was signed only by the American Surety Company, and in 1927 the new bond was signed by Robert Shrader, J. S. Carter, J. G. Duvall, and A. B. Sutherland, and by none of the other parties. In the suit for the school fund, judgment was entered against the sureties in the bond executed in 1927, also American Surety Company, P. S. Head, J. W. Yeager, C. H. Sneed, and James H. Bowling. The judgment of the court in cases 2 and 3 was against P. S. Head, C. H. Sneed, W. D. Clore, J. H. Bowling, J. Wood Yeager, and the American Surety Company.

It was alleged in the pleadings and to some extent shown by the proof that no one could tell when the defalcation occurred. Yeager as commissioner made his reports annually to the court in each of these cases, and the court confirmed his reports. In the two cases where land had been sold he was ordered by the court to lend out the proceeds and pay the interest to the persons entitled thereto. In the school fund case the record does not show that the court made any order on this subject. But the record does contain his annual reports to the court showing what he had received and expended and the amount of money in his hands. These reports were approved by the court.

It is earnestly insisted for the appellants Clore,

Shrader, and Carter, who only signed the bond executed in 1927, that no judgment for the school fund, under the facts shown, should have been rendered against them. It is earnestly insisted for the American Surety Company, who only signed the bond executed in 1926, that no judgment for the other two funds should have been rendered against it. The administrator of P. S. Head, who signed the previous bonds, insists that no judgment should have been rendered against him for there is no showing that the defalcation occurred during the term for which he was liable. All of them insist that the action was barred by the five or seven year statute of limitation. They are the only appellants on the appeal now before the court.

1. By subsection 3 of section 606 of the Civil Code of Practice, it is provided that no person shall testify for himself in an equitable action after taking other testimony for himself in chief. W. L. Dawson was one of the parties plaintiff in the action. The plaintiffs first took the deposition of Joseph Fitzgerald, the clerk of the Oldham circuit court, and proved by him, as clerk, that certain papers were filed in the court, and a copy of these papers was made a part of his deposition. He did not testify on any other subject. He was introduced first because the papers he filed were necessary to be before the witness when the deposition of Dawson was taken. While this was irregular, it prejudiced no substantial rights of the appellees; for Fitzgerald did not testify on any subject that Dawson testified on, and the rule is that the deposition of a party in an equitable action is competent although before testifying he had taken the deposition of a witness as to an entirely different matter. Davis v. Kimberlain, 188 Ky. 147, 221 S. W. 226.

2. Was Yeager's book, in which he kept his accounts of the different matters in his hands, competent against his sureties?

While all the entries in this book were not in his own handwriting, the accounts were all carried forward, and from the book, as a whole, it is clear that he recognized the entries that had not been made in his own handwriting. Unless he kept a daily account he could not intelligently make his regular reports to the court. The keeping of the book was necessary to the proper performance of the duties of the office, and as shown

the book was regularly kept for this purpose. In 22 C. J. p. 89, sec. 1083, the rule is thus stated:

"A statement contained in a book entry may amount to an admission, in which case it is, like other admissions, competent evidence against the party by whom, or under whose direction, the entry was made, and also against those claiming under him."

To the same effect, see 1 Greenleaf on Evidence, sec. 150.

In Kuhl v. Chamberlain, 140 Iowa, 546, 118 N. W. 776, 778, 21 L. R. A. (N. S.) page 766, the suit was on the bond of a county treasurer and the books kept by him had been excluded by the circuit court; the court said:

"On the trial of the case the plaintiff offered in evidence the bank books of H. S. Green for the purpose of showing the amount of his deposits in said bank at the time of its failure. These books consisted both of journals and ledgers, and show an itemized account with the plaintiff including all items of deposit and withdrawal, and showing a balance in his favor of $2,336.64. The defendants objected to the introduction of these books on the ground that they were incompetent as against the defendant sureties; such defendants not being parties to the transaction. In this ruling the trial court doubtless erred. The books were admissible in plaintiff's favor as against the defendant sureties, for the purpose of making a prima facie case. See Boone County v. Jones, 54 Iowa, 709, 37 Am. Rep. 229, 2 N. W. 987, 7 N. W. 155."

See, also, notes to 138 Am. St. Rep. 474 and 53 L. R. A. 534 and 10 R. C. L. 1171; 46 C. J. sec. 441, p. 1082.

The circuit court properly held Yeager's book, showing the amount he had received and what he had paid out, competent evidence against the sureties in his bond.

3. Was the money collected and held by the commissioner by virtue of his office? In Commonwealth v. Leachman, 55 S. W. 430, 431, 21 Ky. Law Rep. 1408, land had been sold and the commissioner had collected the part of the proceeds going to the infant. He filed in court the report of his collections, which were confirmed by the court. Later he failed to pay over this

money. His sureties were held liable. The court said:

> "When he filed his report in court of his collections, and the court approved his act, the money was properly in his hands in his official capacity. The covenant of Sweeney's official bond required him to 'faithfully discharge every duty' of his office. This covenant requires his sureties to account for the money which he collected and ordered to be distributed by the court."

The same rule was made in Catlin v. U. S. Fidelity, etc., Co., 137 Ky. 208, 125 S. W. 297, where the commissioner had collected money by color of his office but not by virtue of it, and the question of the liability of his surety for the money was involved. Holding the surety liable, the court said:

> "Instead of ordering the money paid back to Catlin, it was ordered to be loaned out by the commissioner and receiver, and was loaned out. The money was thus constructively in the pocket of the court. It still had the power, as well as was under the duty, to repay the money to Catlin. Instead, it directed the commissioner and receiver to collect it and hold it until the further order of the court. If the purpose of the court had been to then repay the money to P. D. Catlin, and had ordered it collected by the receiver and brought into court for that purpose, there would appear but little reason to doubt it was within the competency of the court to so order, and that the receiver in acting under the order would be acting solely in virtue of his office." 137 Ky. 214, 125 S. W. 297, 299.

When the commissioner was ordered by the court to lend out the money in his hands, collect the interest, and pay the interest to certain parties, this order, unless modified, was continuous; and when the commissioner lent the money to A and A paid the loan off, it was the duty of the commissioner to lend the money to somebody else and collect the interest and pay it over as before. The duty of the commissioner was continuous to keep the money loaned out, and if instead of doing this he spent the money himself, he disobeyed the order of the court and violated his bond. The money was in his hands for a continuing purpose.

4. Are the sureties liable to the plaintiffs under

the proof? No question is raised on the appeal as to the liability of the sureties inter se; for only the plaintiffs are made appellees. The only question presented by the record is the liability of the appellants to the plaintiffs. It must be conceded that the sureties in an official bond of a master commissioner are held for the term only for which their bond was given and it is not material that the bond does not express the obligation as the law determines it. United States Fidelity & Guaranty Co. v. Faulkner, 144 Ky. 629, 139 S. W. 853; Commonwealth v. Smith, 14 Ky. Law Rep. 573; Commonwealth v. Columbia Trust Co., 162 Ky. 825, 173 S. W. 386. There is no positive proof when the defalcation here involved occurred. However, when Yeager filed his annual reports as well as his term reports as commissioner, showing the money in his hands, the presumption is that the reports being made in his official capacity are true until the contrary is shown. The burden was, therefore, on the sureties who signed Yeager's bond in 1927 when he was reappointed for another four-year term to show that any fund reported by Yeager in his annual or term report was not on hand when they signed this bond. These sureties were Carter, Duvall, Shrader, and Sutherland. These sureties introduced no proof to show that the funds which Yeager reported on hand when he was reappointed were not then in his hands. The rule is the same where the officer succeeds himself as where he is succeeded by another. The burden is on the sureties for the new term to show that the money reported by Yeager as on hand was in fact not on hand when they signed the bond.

The sureties in the bond executed in October, 1927, covenanted that Yeager would discharge all of his duties. One of his duties was to pay over the money in his hands as ordered by the court. He failed to do this and the covenant of their bond is broken. What the rights of the sureties in the different bonds may be, as between themselves, is a question not presented by the record and not determined. But the presumption that the reports of Yeager are correct until shown to the contrary makes the sureties who executed his bond when he was reappointed in October, 1927, liable to the plaintiffs in this litigation and at the same time exonerates as far as these plaintiffs are concerned those sureties who were on Yeager's bond prior to the year 1927.

5. As to limitations.—The plaintiffs' cause of action accrued when Yeager failed to pay over the money as ordered by the court. Time did not run against them, under the facts as above stated, as long as Yeager held the money under the orders of the court without any order to pay it over. The action was brought promptly after this.

In view of the foregoing, in the appeal of Head's Administratrix, etc., v. Commonwealth of Kentucky for Use and Benefit of W. L. Dawson et al., the judgment as to Shrader and Carter is affirmed, but reversed as to the other appellants, with instructions to enter judgment dismissing the petition of the plaintiff as to them. In the appeal of Head's Administratrix, etc., v. Commonwealth of Kentucky for Use and Benefit of Henrietta Mitchell Sellers et al., the appeal of Shrader and Carter has heretofore been dismissed because no final judgment had been entered against them. This leaves as party appellants in this case Head's administratrix, Clore, and the American Surety Company. In view of what has been said, the judgment as to these appellants is reversed, with instructions to enter a judgment dismissing the petition of the plaintiffs as to them. In the appeal of Head's Administratrix, etc., v. Commonwealth of Kentucky for Use and Benefit of S. S. Cassady et al., the appeal of Shrader and Carter has heretofore been dismissed because no final judgment had been entered against them. This leaves as party appellants in this case Head's administratrix, Clore, and the American Surety Company. In view of what has been said, the judgment as to these appellants is reversed, with instructions to enter a judgment dismissing the petition of the plaintiffs as to them. All other questions are reserved.

Whole court sitting.