## THE DISTRICT TOWNSHIP OF MILFORD, CRAWFORD COUNTY, IOWA, v. H. C. MORRIS, B. H. LEE, AND JOHN J. WALSH, Appellants.

Surety on Bond: Settlement with Principal by Obligee:
1 ESTOPPEL. Sureties for a second term are not concluded by a report by and settlement with the officer at the end of his first term, at which settlement no actual cash was produced; circumstances existing
2 which should have put the board on inquiry, and they may show that the defalcation occurred at the first term. *Boone County v. Jones,* 54 Iowa, 699, 2 N. W. Rep. 987, 7 N. W. Rep. 155, distinguished; *Webster County v. Hutchinson,* 60 Iowa, 724, 9 N. W. Rep. 201, 12 N. W. Rep. 534, followed.

*Appeal from Crawford District Court.*—HON. CHARLES D. GOLDSMITH, Judge.

SATURDAY, MAY 19, 1894.

ACTION against a school treasurer and the sureties on his bond for an alleged balance due the district. Trial to court. Judgment for plaintiff. Defendants appeal.—*Reversed.*

*P. E. C. Lally, T. J. Garrison,* and *J. J. Russell* for appellants.

*J. P. Conner* for appellee.

KINNE, J.—I. On the third Monday of September, 1890, defendant Morris was elected treasurer of plaintiff, and on the twenty-third of said month duly qualified as such officer by the execution and delivery to plaintiff of a bond containing the usual conditions, and which was signed by the other defendants as sureties. It is claimed that at the termination of his term of office he was owing plaintiff, as such treasurer, the sum of two thousand, two hundred and ninety-six dollars and

twenty-eight cents, which he failed and refused to account for and turn over to his successor in office. The answer of the sureties admitted the corporate capacity of plaintiff, and denied all other allegations of the petition. It also stated that all moneys which Morris had in his possession or under his control as treasurer of plaintiff at the time the bond was accepted and approved, as well as all moneys received by him as treasurer of plaintiff, from the time said bond was accepted until the expiration of his term of office on the third Monday of September, 1891, had, prior to the commencement of his suit, been paid out on orders drawn by plaintiff on him. That on the twenty-third of September, 1890, said Morris, as treasurer of plaintiff for the year preceding said twenty-third of September, 1890, made his annual report as treasurer to the board of directors of plaintiff, wherein he credited himself with a balance of three thousand, one hundred and sixty-three dollars and sixty-three cents as then due fron him to plaintiff for the preceding year. That about the time he made said report, and before the bond sued on had been accepted, plaintiff's board examined his accounts, and settled same, finding the balance due as above stated. That at the time Morris made the report, and at the time of said settlement, he did not have in his possession, or under his control, said sum, or any part of it; but in settlement submitted to said board certain drafts, checks, and bills of exchange as representing said amount. That said drafts, checks, and bills of exchange did not represent money, and were of no actual value, but were obtained for the purpose of settlement by said treasurer. That at no time between the time of making said report and settlement and the acceptance of said bond did Morris have in his possession or under his control said three thousand, one hundred and sixty-three dollars and sixty-three cents, or any part of it, but had, long prior to

the time of making said report, converted the same to his own use. That said board, when it made said settlement and accepted said bond, knew that said treasurer did not have said money in his possession or under his control. That said moneys are the same moneys sued for in this action. That no part of the money shown by said report and settlement was ever in the possession or control of said treasurer at or since the execution, delivery, and acceptance of the bond sued on. They further aver that since they signed the bond it has been materially altered, whereby defendants' obligations have been changed, and that said alteration consisted in indorsing on the face thereof the following: "Teachers fund on hand, two thousand, eight hundred and two dollars and eighty-two cents; contingent fund, three hundred and sixty dollars and eighty-seven cents; total, three thousand, one hundred and sixty-three dollars and sixty-nine cents." That said indorsement was made without the knowledge or consent of defendants. Defendant Morris, in a separate answer, denied all of the allegations in the petition. The cause was tried to the court, and a decree entered for plaintiff for the amount claimed and for costs.

II. The defense in this action, in brief, is that the defalcation on the part of the treasurer occurred during his term of office prior to the execution of the bond sued on; that the sureties are not concluded by the settlement, because the money was not produced, and it was therefore not such a settlement as the law contemplated; that the bond was materially altered after defendants signed it. This court has held that when an officer charged with the custody of public funds is re-elected one or more times, and serves two or more terms, the sureties upon a subsequent bond become *prima facie* liable for such balance of the previous account as is chargeable to their principal. *District Tp. of Fox v. McCord*, 54 Iowa, 346, 6 N. W. Rep. 536;

*Kelley v. State*, 25 Ohio St. 569; *Kagay v. Trustees*, 68 Ill. 75; *Pine Co. v. Willard*, 39 Minn. 125, 39 N. W. Rep. 71. The question, then, arises, may the sureties show that the defalcation existed prior to the time Morris settled with the board, or are they concluded by his report? Appellee relies upon *Boone Co. v. Jones*, 54 Iowa, 699, 2 N. W. Rep. 987, and 7 N. W. Rep. 155, in support of his contention that appellants are estopped from showing that Morris did not have the money which he charged himself with, at the beginning of his last term of office. In that case it appears that the treasurer's accounts for the year 1876 had been closed by his charging himself with amounts to balance, which balances were by him carried forward with his accounts as treasurer for 1877 as so much cash on hand. This settlement appears to have been made in January, 1877. The bond was executed in November, 1876. At the settlement Jones made an accounting. Just what sort of a showing he made to the board that he had the money called for on hand does not appear. It was proposed to show that for the term for which defendants were his bondsmen Jones had paid out more money than he had received, and that the deficit occurred before the bond was given.

All this was excluded on the ground that the treasurer and his sureties were bound by the settlement of 1877, and other subsequent settlements. The facts in the Boone county case are somewhat different from those in the case at bar. In that case, settlements were had after the bond was given; in the case at bar, the settlement was made before the bond was given. Again, the *Boone* decision was rested in part on the fact that, in the absence of evidence to the contrary, it would be presumed that the board of supervisors did their duty, and made such a settlement as the law required. That case is, then, distinguishable from the one at bar, for, in this, the board of directors, in making

settlement with Morris, did not require him to produce
the money which his books showed he owed the dis-
trict, but settled with him for his first term's indebt-
edness upon the presentation of a draft covering the
amount. If the settlement made in the case at bar was
such a one as the law contemplates, then, under the
*Boone* county case, the sureties might be estopped
from questioning the facts as shown by the officer's
books. Our statute provides that the board of super-
visors, at their regular meetings in January and June
of each year, "shall make a full and complete settle-
ment with the county treasurer," as they must also
when he goes out of office. Code, sections 913, 917. As
to school treasurers, it is provided that the board of
directors "shall, from time to time, examine the ac-
counts of the treasurer, and make settlement with
him." *Id.*, section 1732. The language of the two sec-
tions is, in substance, the same. It was held in
*Webster Co. v. Hutchinson*, 60 Iowa, 724, 9 N. W.
Rep. 901, and 12 N. W. Rep. 534, that sureties of a
county treasurer were not concluded when the books
had been balanced without the proper settlement hav-
ing been made,—that is, without the production of the
funds shown to be on hand. A few days before the
settlement in the case at bar was made, Morris had
presented in settlement of the amount conceded
to have been due from him some money, a draft,
a grain ticket, and his personal check on a bank. He
claimed that he had the money, but it was not safe to
bring it to a meeting held in the night. At the next
meeting, when the settlement was effected, Morris pro-
duced a draft on a solvent bank for an amount greater
than he owed the district. This draft was treated by
the board as money, and on the faith of it, the settle-
ment was accomplished, and the bond sued on ap-
proved. The evidence shows that before making this

settlement the board knew that it was talked that Morris was behind in his accounts. It may. be conceded that when the settlement was effected the board thought Morris had the money, but we think, in view of the fact that they knew it was currently rumored that he was short, that but a few days before he had attempted to make a settlement by tendering some money, a draft, a wheat ticket, and his personal check, they should be held to the exercise of vigilance in making a settlement with him. The settlement made was not such as the law contemplates. Not a dollar in money was produced. The board took the treasurer's word that he had the money. They treated the draft as money. Knowing, as they did, that he had been elected for another term, and hence would not be compelled to turn over the amount due from him to another, it was their duty to be especially careful to see that the treasurer, in fact, had the funds on hand. We do not say that there might not be cases where the board would be justified in treating a draft on a solvent bank as cash in effecting a settlement with its officer, as when they knew he had in the bank, subject to his credit, the amount represented by the draft; but, in this case, the board made no investigation to ascertain whether Morris had, in fact, a dollar in the bank. As a matter of fact, he did not have in said bank over one sixth of the amount represented by the draft. He borrowed the draft for the very purpose of deceiving the board. He only obtained it on the promise to return it after he had accomplished his purpose. There is entirely too much carelessness on the part of boards in settling with such officers, and the only safe rule is in all cases to compel the officer to actually produce the money. True, even in such a case the officer may borrow the money for the purpose of making a settlement; but if he produces it, and the board have no

reason to doubt it is his, and settle with him so believing, they have discharged their duty. Not having settled, as the law contemplates, by a production of the money, we hold that the sureties were not estopped from showing that the defalcation for which they are sought to be charged, in fact, occurred prior to the making and approval of their bond. There does not seem to be any real contention over the fact that the defalcation did occur before the execution of the bond sued on. The evidence seems to us to show that to be the fact. Hence these sureties are not liable in this action.

III. It is said that when the bond was signed by these sureties there was indorsed upon it in the handwriting of Morris the amount which should have been in his hands as treasurer, and that defendants were chargeable with notice of the amount of money on hand. The evidence, we think, abundantly shows that this indorsement was not on the bond at the time these sureties signed it, but was put on afterward. It was, therefore, no notice to them. In view of our holding as to the settlement, it is not necessary to consider the effect of the claimed alteration of the bond after it was signed by the sureties. For the reasons given, the judgment is REVERSED.