INDEPENDENT SCHOOL DISTRICT OF SIOUX CITY, IOWA, v. HARRY S. HUBBARD and THE AMERICAN SURETY COMPANY OF NEW YORK, Appellant.

**Settlement with Officer:** CONCLUSIVENESS. Where a re elected treasurer of a school district makes a settlement and produces the funds in his control, as required by Code 1873, section 690. requiring the same before his bond shall be approved, such settlement is in the absence of fraud or mistake, conclusive, and no inquiry can be made as to the source of the necessary funds.

ACTUAL PRODUCTION OF FUNDS. Where funds in the control of a re-elected treasurer of a school district are not actually produced on his settlement with the board of directors before the approval of his bond, as required by Code 1873, section 690, the sureties are not estopped from showing that a defalcation for which they are sought to be charged occurred prior to the making and approval of their bond.

SAME: *Conversion.* The fact that a sum represented by certificates of deposit, produced by a re-elected treasurer of a school district, temporarily borrowed on his notes for the purpose of his settlement does not affect the title to the fund, and, if he subsequently uses it to pay the notes, it amounts to a conversion, for which the sureties on his bond, approved after such settlement, are liable.

*Certificates of deposit.* Certificates of deposit issued by solvent banks to a re-elected treasurer of a school district, treated as cash in his control at his annual settlement with the board, and on which the cash could and would have been produced, if demanded at the time, should be treated as cash in a suit on his bond, approved after such settlement.

*Jury question.* Where the undisputed testimony showed that a re-elected treasurer of a school district at his annual settlement produced certificates of deposit in lieu of money, which was treated as money by the board, and that certain amounts could and would have been produced thereon if demanded, the question whether the money was beyond his reach at the time of the settlement was for the jury.

*Same.* The sureties of a re-elected treasurer of a school district are not liable for sums represented by certificates of deposit issued to him by insolvent banks for moneys belonging to the district, loaned to the banks for his private benefit during a prior term, and treated by the board as cash in their annual settlement with him before the approval of his bond.

**Evidence:** OFFICER AND SURETY: *Records.* Books of account kept and reports made by a school district treasurer in his official capacity as required by law are admissible as evidence of his indebtedness against him and his sureties.

SAME. Evidence of statements made by the treasurer of a school district during his annual settlement with the board of directors is admissible in an action on the bond.

SETTTEMENT: *Burden of proof.* Where a re-elected treasurer of a school district has made a settlement with the board of directors before their approval of his official bond, the burden is on his surety to show failure to produce all the funds in his control on such settlement, as reqired by Code 1873, section 690, and their misappropriation prior to its approval.

**Sureties:** DUTY OF SCHOOL BOARD TOWARDS. A board of school directors are not bound to warn a surety of the dishonesty of a re-elected treasurer of the district, although known to them before his bond was executed.

SAME. The sureties on the bond of the treasurer of a school district cannot avoid their liability because of false statements as to the treasurer's accounts made to them by the president of the school board before the bond was executed, without authority, and having no connection with his official duties.

*Good faith.* Good faith or diligence of directors of a school district in treating evidences of debt as money on a settlement with a re-elected treasurer, before approving his bond, cannot be considered in determining the question as to when he embezzled the public funds.

*Appeal from Woodbury District Court.—*HON. GEORGE W. WAKEFIELD, Judge.

FRIDAY, DECEMBER 15, 1899.

FROM judgment entered against the American Surety Company, as surety on the bond of Harry S. Hubbard, as treasurer of the plaintiff, it appeals.—REVERSED.

*William Milchrist* and *T. G. Henderson* for appellant.

*Marks & Mould* and *Bevington & Kennedy* for appellee.

LADD, J.—Harry Hubbard was chosen treasurer of the independent school district of Sioux City by its board of directors in September, 1893, and each year thereafter until March 21, 1898, when, under the provisions of the Code (section 2754), his successor was elected by the voters of the district. At that time he should have had in money belonging to the different funds fifty thousand one hundred and seventy-four dollars and thirty-one cents. When this amount was demanded by his successor in office, he failed to turn it over, and this action was instituted for the recovery thereof from him and the surety on his bond, the American Surety Company of New York. The latter only defended. The bond covered a period of one year from September 20, 1897, though Hubbard's term of office expired in March, 1898. The issues raised by the answer involved the settlement of Hubbard with the board in September, 1897, and the validity of this bond. These will sufficiently appear when considered. The introduction in evidence of his annual report to the board of directors of September, 1897, and his final report made in March, 1898, together with his book of account as treasurer, made out a *prima facie* case. The statute, as it formerly stood, required him to keep "a correct account of all expenses and receipts in a book provided for that purpose," and "to make to the board on the third Monday in September a full and complete annual report," and a statement of the finances of the district whenever requested by the board (sections 1747, 1751, Code 1873) ; and the provisions of the Code are, in substance, the same (sec—

tions 2768, 2769, Code.) These reports were prepared, and his book of account kept by him in his official capacity as treasurer; and, as all officers are presumed, in the absence of any showing to the contrary, to have properly discharged their duties, the book of account was rightly received as an accurate record of the receipts and expenditures of the district, and the reports as true statements of its finances, without other proof of being correct. There is some conflict in the authorities as to the conclusiveness of such accounts and reports, but none as to their admissibility as evidence of indebtedness against the official and his sureties. The authorities are collated in a note to *Coleman v. Pike Co.,* 83 Ala. 326, 3 Am. St. Rep. 746 (s. c. 3 South. Rep. 755); *U. S. v. Boyd,* 5 How. 29, 12 L. Ed. 36, and *City of Chicago v. Gage,* 95 Ill. 593 (35 Am. St. Rep. 197).

II.   According to the statement made, the treasurer should have had in September, 1897, the sum of forty-eight thousand three hundred and thirty-nine dollars and eight cents, and he is presumed to have had on hand at that time all the funds with which he was chargeable. *District Tp. of Fox v. McCord,* 54 Iowa, 347. The statute provided that, when a "re-elected officer has had public funds or property in his control, under color of his office, his bond shall not be approved until he has produced and fully accounted for such funds and property to the proper person to whom he should account therefor." Section 690, Code 1873. See section 1193, Code. If the settlement of Hubbard was made, and all the funds and property of the district were actually produced, as required by law, such settlement, in the absence of fraud or mistake, is conclusive, and no inquiry will be tolerated concerning the source from whence any of the necessary money was derived. *Boone County v. Jones,* 54 Iowa, 699; *Morley v. Town of Melamora,* 78 Ill. 394; *Gage v. City of Chicago,* 2 Ill. 332. This duty of settling and requiring the production of funds before approving the bond, however, is due to the public and not

to the surety. Even in the absence of settlement he is liable for any defalcation during the life of the bond. The board of directors, as such, were under no obligation to look after the interests of the American Surety Company, or to protect it from liability. *Palmer v. Woods,* 75 Iowa, 402; *Held v. Bagwell,* 58 Iowa, 144; *Board v. Otis,* 62 N. Y. 88. But the surety cannot be held liable for funds not produced at such settlement, and which were appropriated by the treasurer during some previous term. *District Tp. of Milford v. Morris,* 91 Iowa, 198; *Webster County v. Hutchinson,* 60 Iowa, 721. As proof of a settlement establishes a *prima facie* case, the burden is cast on the surety to show the failure to produce funds, and their misappropriation, prior to the taking effect of his bond.

III. The statutes contemplate the actual production of money belonging to the public in making these settlements. Taxes are paid in money, which is turned over to the school treasurer. He has no authority, under the law, to invest or deposit it, or to pay it out, save under the direction of the board on orders duly signed for the expenses of the district. Having no legal right to change its form, how can he be permitted to produce any balance in his hands, except in the kind he has received? In *Boone County v. Jones,* 54 Iowa, 706, the court said: "It must be presumed that the members of the board did their duty by counting the money which his (the treasurer's) report showed should be on hand." In *Webster County v. Hutchinson,* 60 Iowa, 721, the board of supervisors had counted, as funds, many thousands of dollars in certificates of deposit, checks, and other promises to pay, which had been loaned to the treasurer for such purpose, and were without validity, and it was held that "the members of the board were derelict in their duty in not requiring the treasurer to produce the funds,—the money,—or at least in not making inquiry of the proper parties as to what value the paper in question possessed." In *District Tp. of Milford v. Morris,* 91 Iowa,

198, the court declared in unmistakable terms that a settlement at which a draft was produced in lieu of cash was "not such as the law contemplates. * · * * We do not say that there might not be cases where the board would be justified in treating a draft on a solvent bank as cash in effecting a settlement with its officer; as, when they knew he had in the bank, subject to his credit, the amount represented by the draft. * * * There is entirely too much carelessness on the part of the boards in settling with such officers, and the only safe rule is in all cases to compel the officer to actually produce the money. * * * Not having settled, as the law contemplates, by a production of the money, we hold that the sureties were not estopped from showing that the defalcation for which they are sought to be charged in fact occurred prior to the making and approval of their bond."

IV.    It must not be overlooked, however, that these settlements and the production of funds are intended for the security and protection of the municipalities by insuring punctuality and responsibility of public officials, and form no part of the contract with the surety.  *Crawn v. Com.* 84 Va. 282 (10 Am. St. Rep. 837, 4 S. E. Rep. 721); *U. S. v. Kirkpatrick,* 9 Wheat. 720 (6 L. Ed. 199).  See *State v. Carlton,* 1 Gill, 249.  The surety may insist on the strict construction of his contract, and that no misrepresentation be practiced in its procurement.  But it is no part of the obligee's duty to furnish him information.  This he must ascertain for himself.  Even if the board knew the treasurer had been using the money of the district during a prior term, they were not bound voluntarily to warn the surety of his dishonesty.  They might remain passive, and, if the bond was sufficient, approve it.  *Pine County v. Willard,* 39 Minn. 125 (39 N. W. Rep. 71, 1 L. R. A. 118); *City of Harrisburgh v. Guilles,* 192 Pa. (44 Atl. Rep. 44).  See *Pickering v. Day,* 3 Houst. 474.  It is well said by Mr.

Throop in his work on Public Officers (section 202) that: "As a general rule, the sovereign power is not charged with duties or obligations to individuals, and the exercise of its authority is not controlled by any rights which they may assert, except in the cases where the constitution has expressly fixed limits to such exercise. And where the bond runs to a municipal corporation, or a public officer, the obligee is a mere representative of a sovereign power, whose rights, powers, duties, and liabilities are fixed by statute, which not only charges the sureties with notice of the extent thereof, but binds them as well as the obligee. Thus, the obligee takes no power by intendment, or by his own acts or omissions of any other person. Consequently, questions arising between the sureties and the obligee in an official bond are properly to be regarded as part of those which relate to the liabilities, rather than the rights, of sureties." The supreme court of the United States, in *Hart v. U. S.* 95 U. S. 316 (24 L. Ed. 479), used this language: "The government is not responsible for the laches or the wrongful acts of its officers. * * * Every surety upon an official bond to the government is presumed to enter into his contract with full knowledge of this principle of law, and to consent to be dealt with accordingly. The government enters into no contract with him that its officers shall perform their duties. A government may be the loser by the negligence of its officers, but it never becomes bound to others for the consequences of such neglect, unless it be by express agreement to that effect." The authorities relied on by the appellant relate to the duty of individuals or private corporations to sureties, and are not in point. The surety, then, is not in a position to complain, because of the failure of his principal to produce the money at the settlement. The presumption of the law is against defalcation, and to overcome this he must go further, and show not only that the money was not produced, but that his principal did not, at the time liability on the bond attached, have it in his possession or control; for, if

the money was within the keeping of him for whom the surety vouched, there was no misappropriation. The statutes do not authorize the school treasurer to loan or deposit public funds. *Independent Dist. of Boyer v. King,* 80 Iowa, 500; *District Tp. of Bluff Creek v. Hardinbrook,* 40 Iowa, 130. Nor do they permit the board of directors, at their annual settlements with him, to treat certificates of deposit, drafts, checks, or other evidences of debt as cash; and, as the law contemplates the production of money, the good faith of officials making settlements with custodians of public funds in examining evidences of indebtedness of any kind ought not to be considered. Their good intention could have no effect upon the treasurer's account, or what he had done with the district's money. In accepting anything other than that required by law, they are derelict in the performance of their duty. If, however, they do take into account certificates of deposit and other evidences of debt, which actually represent money, and the cash could and would have been produced by the treasurer had the board so desired, it is not perceived wherein the surety has suffered harm. In such a case these actually represent money. Had the money been borrowed temporarily for use in settlement. it, for the time being, would have become the property of the district, and its return in satisfaction of private obligations, even incurred for the purpose of procuring it, would have operated as a new conversion, for which the surety on the new bond would be answerable. Whether it might be followed by the district to the hands of one receiving it with knowledge, we need not now inquire. Whatever may become of money after being produced for the time being, it is a part of the public funds, and should be treated as such. If thereafter used to satisfy private obligations made in acquiring it, this is a conversion after settlement, and not before. If the money was in any way brought into the treasury, even though with the intention to afterwards withdraw it, and it

was in fact thereafter abstracted, this surety is responsible. See *Ingraham v. President,* etc., 13 Mass. 208; *Pine County v. Willard, supra.*

V. Demand certificates of deposit, issued by solvent banks, are usually treated as cash in commercial transactions, and, if these, running to the official as such, are procured in some way, and actually represent money obtainable on demand, does not such money become the district's property? If so, then its return to apply on a private debt is a conversion. We are of opinion that, if the certificates actually represent cash within the control of the treasurer, which could and would have been produced had the board of directors so demanded, they should be treated as money in a suit on the official bond. To hold otherwise would ignore business usages, and give undeserved importance to an irregularity, which could not have affected the rights of any one concerned.

VI. In making settlement with the board of directors, the treasurer produced no money. At that time he was cashier of the Home Savings Bank, and in lieu of cash presented the statement of its vice president to the effect that, as treasurer of plaintiff, he had on deposit with it the sum of eighteen thousand dollars; also four time certificates of deposit, aggregating twenty thousand five hundred dollars, payable in three and six months, with interest at the rate of 5 per cent. per annum, and a demand certificate of deposit issued by the Security National Bank of Sioux City for nine thousand six hundred dollars. We may consider these items separately, and, first, of the open account with the Home Savings Bank it then had in its vaults ten thousand one hundred and seven dollars and forty-five cents, and four hundred and twenty-nine dollars and seventy-nine cents on deposit with the Hanover National Bank of New York City, and the evidence shows without controversy that these amounts could and would have been produced had the board indicated its wish that this be done. Without question, the surety's liability to this extent was

fixed.   This bank had also on deposit with the Security
National Bank eight thousand one hundred and eighty-three
dollars and fifty-two cents.   There was evidence tending
to show that Henry Hubbard and either W. D. Irvine or
Leah Hubbard had each executed a note to this bank for five
thousand dollars, and that the Home Savings Bank had
agreed not to reduce its deposits with such bank below the
sum of ten thousand dollars, and that the Security National
Bank might charge such notes to the account of the Home
Savings Bank at any time.   It will be observed, however,
that the deposit had been reduced below the limit fixed, and
Irvine, as vice president of the latter bank, testified, in sub-
stance, that the money could and would have been produced
had the board so demanded.   It cannot be said, then,
that this money was absolutely beyond the reach of
the treasurer.   That was a question for the jury to
determine.   The certificate of deposit of nine thousand six
hundred dollars issued to him as treasurer of the Security
National Bank was accompanied by a letter from its presi-
dent, saying the deposit of funds had been made, and the
money would be produced, if desired.   The evidence is
undisputed that this would have been done, and that the
certificate represented money.   That the means were tem-
porarily borrowed on the treasurer's private note and that
of another for the purpose of settlement cannot affect the
title to the fund.   If he subsequently used it to satisfy these
notes, it amounted to a new conversion during the life of
this surety's bond.

VII.   The balance of the money for which the treasurer
was accountable was represented by four time certificates
of deposit running to "Harry Hubbard, Treasurer."   Three
of these were signed by W. D. Irvine, vice president of the
Home Savings Bank, and the other by Hubbard, as cashier.
We set out the respective amounts and time of matur-
ity.:   March 16, 1897, three thousand five hundred dollars
payable in six months; August 20, 1897, five thousand five

hundred dollars, payable in six months; September 7, 1897. five thousand dollars, payable in three months; September 16, 1897, six thousand five hundred dollars, payable in three months. These were never paid. The bank failed in March 1898, and the record does not disclose whether its assets are sufficient to satisfy these certificates. The treasurer had no authority to loan this money for private gain, and the failure of the board to provide compensation for services rendered by him furnishes no excuse for so doing. His duty was to hold the money subject to orders of the proper officers, and he had no right to use it in any other way. Even though the directors had agreed that he might loan the money, this would have been binding on no one. The statute provided the manner of compensation, and it was no part of the board's duty to devise other schemes, though ostensibly in the interest of economy. See *City of Wilkesbarre v. Rock afellow,* 171 Pa. St. 177 (33 Alt. Rep. 269, 30 L. R. A. 393). The money was beyond his reach. As between himself and the bank, the latter merely owed him a debt. As to him, it was a private loan of public money, and a conversion of it. But even if this were not so, neither these certificates nor the moneys they represent were converted by the treasurer after this bond took effect. He never received anything on them after the annual settlement of 1897, and they were in his possession at the expiration of his term. True, he did not turn them over to his successor at that time, but he was not requested to do so. Money, not promises, was then wanted. Even refusal on demand is not conclusive evidence of conversion in all cases. The interest of the district in these certificates was not impaired in the slighest degree during the term for which the defendant was surety, and the latter is not liable for the amount represented by them.

VIII. In view of another trial, we should dispose of some other questions presented. Before the bond was exe-

cuted, in reply to an inquiry from the surety, the president of the board advised it that the treasurer had last settled in February, 1897, and at that time the funds were counted, and found correct. This was untrue. The appellant claims to have relied on this misstatement and, because of its falsity, seeks to rescind the contract. The representation was no part of the duty of the president of the board, nor was it ever authorized or ratified by that body. As what he said had no connection with the duties of his office, it must be regarded as his individual act, and not binding on the district. *Forcum v. Independent Dist. of Montezuma,* 99 Iowa, 435; *Young v. Blackhawk County,* 66 Iowa, 460; *Hard v. City of Decorah,* 43 Iowa, 317; *Independent School District. No. 6 of Cedar Tp. v. Wirtner,* 85 Iowa, 387. See *Palmer v. Village of St. Albans,* 60 Vt. 427 (6 Am. St. Rep. 125, and note s. c. Atl. Rep. 569).

IX. That evidence of the conversations with Hubbard during the settlement was admissible appears from *Boone County v. Jones,* 54 Iowa, 346. What the vice president of the bank said was mere hearsay. It was doubtless received as bearing on the good faith of the directors in accepting evidences of debt in lieu of money. As already said, we do not think good faith or diligence on their part ought to be considered in determining at what time another has embezzled public money. Neither *Webster County v. Hutchinson* nor *District Tp. of Milford v. Morris* so holds.—REVERSED.

GRANGER, J., not sitting.