**WESTERN INDEMNITY CO. v. FREE AND ACCEPTED MASONS OF TEXAS, et al. (No. 420–3293.)**

(Commission of Appeals of Texas, Section B. Feb. 18, 1925.)

**1. Insurance ⟨⟩612(2)—Statutory provisions, as to contract stipulations for notice of claim for damages, apply to provisions for notice of loss in fidelity bonds.**

Rev. St. art. 5714, pertaining to stipulations in contracts requiring notice of claim for damages as condition precedent to suit, applies to provisions for notice of loss in fidelity bonds.

**2. Insurance ⟨⟩539(3)—Provision in fidelity bond for notice of loss "immediately" on discovery void.**

Provision in fidelity bond, for notice of loss "immediately" on discovery thereof, held void, under Rev. St. art. 5714, as allowing less than 90 days after accrual of cause of action; "immediately" ordinarily meaning less than such time.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Immediately.]

**3. Insurance ⟨⟩430—Treasurer's payment of warrants due at beginning of period covered by fidelity bond, not loss by larceny or embezzlement within fidelity bond.**

Treasurer's payment of warrants, on which society was liable at beginning of period covered by fidelity bond, from moneys then on hand or due by him, was not loss sustained because of personal dishonesty, amounting to larceny or embezzlement, within fidelity bond.

**4. Insurance ⟨⟩430—Surety on fidelity bond not responsible for defaults antedating contract.**

Surety on fidelity bond is not responsible for defaults antedating contract.

**5. Appeal and error ⟨⟩1002—Conflicting evidence not weighed by Commission of Appeals.**

Commission of Appeals will not weigh conflicting evidence.

**6. Trial ⟨⟩260(9)—Refusal of charge to find for surety on fidelity bond, if losses resulted from principal's acts before execution of bond, held reversible error.**

In action against surety on fidelity bond, refusal of charge to find for defendant, if plaintiff society's losses within period of bond resulted from its treasurer's acts in receiving and disbursing funds before execution of bonds, held reversible error, such defense not being completely and affirmatively presented by main charge given.

**7. Appeal and error ⟨⟩1173(2)—Judgment against defendant not appealing not disturbed.**

Judgment against defendant not appealing cannot be disturbed on writ of error by codefendant.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Action by the Free and Accepted Masons of Texas, and others, against the Western Indemnity Company and another. Judgment for plaintiffs was affirmed by the Court of Civil Appeals (198 S. W. 1092), and the named defendant brings error. Reversed and remanded as to the named defendant.

Thos. B. Love, W. M. Taylor, and Carden, Starling, Carden, Hemphill & Wallace, all of Dallas, for plaintiff in error.

M. L. Robertson, of Dallas, for B. R. Bluitt.

Mike E. Smith, of Fort Worth, O. W. Gillespie, of Brownfield, and Slay, Simon & Smith, of Fort Worth, for defendants in error.

STAYTON, J. [1] The application for writ of error was granted because of a conflict of opinions upon the construction of Rev. St. art. 5714, which pertains to stipulations in contracts requiring notice of "any claim for damages" as a condition precedent to suit. It is contended in this case that provisions for notice of "loss" in fidelity bonds, such as each of the instruments here sued on, do not come within the statute because, it is said, that law only applies to notices of "claims for damages," as such, and moreover does not apply to obligations of the present character. The contrary was held by the trial court and the Court of Civil Appeals, as well as by this court in Citizens' etc., Bank v. National Surety Co., 258 S. W. 468, the opinion in which is adhered to and need not be repeated. It was there held that the statute includes stipulations for notice of "loss" placed by obligors of any character in bonds of the present nature.

[2] The notice in the present instance was required to be given "immediately" upon discovery of loss. As was also held in the cited case, the statute makes such a stipulation void unless it is reasonable, and unless it omits calling for an intervening time of less than 90 days between the accrual of the cause of action and the required notice. If the period called for in the present bond was capable of being less than 90 days, it was therefore void under the statute, which, as likewise held in the former decision, reaches

evasions as well as express infractions of the law. That "immediately" may, and ordinarily does, mean less than 90 days is obvious. The company recognizes this in the present instance, when it contends that the requirement of immediate notice was not met because the undisputed evidence was that the obligee discovered this loss "about 60 days before giving any notice." The notice clause being void, the first, third through to fourteenth, and forty-third assignments of error, which depend upon it, should be overruled.

Another assignment of error (the forty-first) complains that the Court of Civil Appeals erred because it sustained the action of the trial court in refusing a special charge to the effect that the verdict should be for defendant if the loss sued for actually occurred before the execution of the bonds. There were two bonds, one of May 26, and the other of May 31, 1911; the first appears to have been effective, if at all, for five days only, and the latter to have superseded it as to the rest of the period under investigation. There was an issue as to the validity of the first bond. It was alleged that both obligations were renewed for a year; the proof only showed a renewal as to the last one. No defaults affecting the result in this case occurred during the initial five days. Each of these instruments excluded liability as to losses caused by the treasurer prior to its date, and as to indebtedness on its date of the treasurer to the society. The company's liability was limited to "loss sustained by the obligee within the period (covered by each bond) * * * by reason of personal dishonesty of the official amounting to larceny or embezzlement of funds received by the official from dues," etc.

[3] Upon this question of whether the loss occurred before or during the bond period, an issue was presented, as will be shown, both by the pleadings and by the evidence. It is contended that it was not sufficiently submitted in the charge of the court.

The pleadings covered the issue. The petition alleged and exhibited the bonds, and averred that the loss, amounting to $13,388.-94, occurred during their period; which the answer denied both generally and specially.

The evidence, though conflicting in numerous respects, also raised the issue. The testimony upon it came mostly from an auditor whose report and knowledge were based upon books, accounts, and vouchers covering a period that began three years before the bonds were written; that is, three years before May, 1911. On October 26, 1911 (the auditor said) the treasurer "had in his hands $151.41; that was his balance on that date; that is, he was charged with that amount on that date"— a time, it will be observed, some five months subsequent to the execution of the bonds. Thereafter (he continued) the treasurer re-

ceived from the society $37,671.30, and paid out of that sum during the remainder of the bond period a less amount, that is, $24,433.-77; thus leaving unaccounted for the difference between the first two figures and the latter, which is $13,388.94, and, as already mentioned, is the amount for which the plaintiff sued.

That at the end of the bond period the books showed a shortage in the sum last mentioned is undisputed, and is conceded by the parties. And, as has just been seen, the auditor gave testimony from which it could be concluded that it occurred during a segregated part of the bond period. But he also gave other testimony of a contrary nature. On cross-examination he stated that after May 26, 1911, the beginning of the bond period, and until the end of the period, this officer received from the society a total of $48,330.50, and paid out in his official capacity a greater amount, that is, $55,799.63. If this latter testimony be true, if it be true that during the whole bond period the treasurer legally paid out more than he received, it reasonably follows, there appearing on the books a shortage of over $13,000 at the end of the period, that this deficit occurred prior to the bond period, and was carried forward into it on the books only. There is abundant evidence to show that the auditor's first testimony, if intended to reflect cash transactions, was fallacious, and that his contrary statement on cross-examination was correct.

Since 1904 the treasurer, with the consent of the society, openly and, it should be said, with apparent ignorance of any wrong, had been acting more as banker than as a trustee. He had been mingling the money of the society and his own in the same fund, and using from this source indiscriminately both for the needs and investments of himself and the requirements of his principal. He had kept no cash account of the latter's funds. Before the bond period he had frequently been unable to meet the proper drafts of the society out of money on hand, and had been forced to use dilatory methods, and to borrow in large amounts to meet them at all.

Books in evidence demonstrate that the auditor's first testimony was wrong. He began, as stated, with a balance on hand of $151.41 based on accounts running back three years. The date of this balance was over five months after the bond period commenced. The surety asks, pertinently, why omit these five months? The mistake of his first testimony as to a loss during the segregated period arose, according to important evidence, in this way. The treasurer paid out money for the society only by issuing checks to take up general warrants drawn by other officers. He entered in his accounts the dates of the warrants, and not the dates upon which the moneys went out in payment of the checks. The latter payments were

delayed both by the slow circulation of the paper and the tardiness of the treasurer. But the auditor treated them as if made upon the dates of the warrants. In this way, many proper debts of the society, exceeding in amount the alleged shortage, that should have been paid in former months were actually paid in the segregated period upon these warrants, but were not so counted by the auditor. Except for this view the auditor could not have given his first testimony or any testimony of any storage in either the segregated or the bond period. His theory was incorrect, for if the society was, after October 31, 1911, the beginning of the segregated period, still liable out of its assets upon these warrants, as the evidence shows it was as far as it has been developed, the treasurer's payment of them out of moneys then on hand, or then due by him, was, as to the bond period, but the payment of obligations of the society, whatever his previous wrong, and was not "loss sustained * * * by reason of personal dishonesty of the official amounting to larceny or embezzlement," for which alone the company was responsible. Supreme Council Catholic Knights v. Fidelity & Casualty Co., 63 F. 48, 11 C. C. A. 96.

[4, 5] What has been observed is only for the purpose of showing that there was competent and material evidence in accordance with the auditor's testimony on cross-examination that the shortage occurred prior to the execution of the bonds, which, because a surety in a case of this sort is not responsible for defaults antedating its contract, furnishes a good defense to the obligee's suit. Barry v. Screwman's Association, 67 Tex. 250, 3 S. W. 261. No attempt is made to intimate on which side the whole evidence, as to this point, weighed more. It was conflicting.

[6] The trial court said to the jury concerning the alleged defalcation of the treasurer—a man by the name of Bluitt with the title of "Grand Treasurer":

"As between plaintiff and defendant, Western Indemnity Company, you are instructed that if you find and believe from the evidence that on and after October 31, 1911, he received from the plaintiff in the capacity of grand treasurer, sums of money aggregating $37,671.30, as alleged in plaintiff's petition, and you find that thereafter, and prior to May 1913, he did fraudulently embezzle, misapply, and convert to his own use, without the knowledge and consent of plaintiff, Free and Accepted Masons of the state of Texas, the sum of $13,918.09, or any part thereof, then you will return a verdict in favor of the plaintiff against the defendant, Western Indemnity Company, for said amount or so much thereof, if any, you find from the evidence that he so embezzled and misapplied."

The issue was submitted in no other way. It will be observed that this charge follow-

ed the theory of plaintiff, stating almost the exact amounts and the segregated period mentioned by the auditor; that it did not submit defendant's theory, which was that all of the loss occurred prior to the execution of the bonds; and that it stated the facts under which a verdict might be returned for plaintiff, but not the converse, applied to defendant. The latter requested this special charge, and it was refused:

"You are instructed that by the express provision of the bonds sued on, the liability of the company executing such bonds is limited to the loss sustained by the plaintiff within the period covered thereby, by reason of personal dishonesty of the said Bluitt, amounting to larceny or embezzlement of the grand lodge funds received by him, the said Bluitt, specified in said bonds.

"Now, if you believe from the evidence that the losses sustained by plaintiff within the period covered by said bonds, or the period of any renewal thereof, *resulting* from any act or acts of the said Bluitt with respect to receiving and disbursing said lodge funds, prior to the execution of said bond or bonds, as the case may be, you will find for the defendant."

It is apparent, as already observed, that the main charge did not concretely and affirmatively present the defense that the loss occurred prior to the bond period, and that the requested charge would, if given, have substantially supplied the omission. There was a quite transparent grammatical error in the latter, as indicated in italics, and it was not as accurate in expression as it might have been, but under the facts of this case no one could have mistaken its meaning. It presented the company's defense upon the merits in a way that was sufficient, and that would have caused plaintiff no legal harm. Under the pleadings and the evidence, the defendant was entitled to have this requested charge given because it alone covered the defense in a concrete and affirmative manner. Wichita Falls Traction Co. v. Adams, 107 Tex. 612, 183 S. W. 155; Galveston, H. & S. A. R. Co. v. Washington, 94 Tex. 510, 63 S. W. 534; Corpus Christi, etc., Co. v. Kjellberg (Tex. Civ. App.) 185 S. W. 430. And especially is this true in the present case, because the trial court had adopted and thereby stressed the plaintiff's theory, and because the undisputed and conceded evidence showed that at the end of the term a paper shortage existed in approximately the sum that was mentioned by the court. Such a showing, though not always meaning liability in a case of this character, is apt to carry with it an inference of liability, and is calculated to have an undue effect upon the minds of jurymen. Under certain circumstances a book deficit at the end of a term has been held to give rise to a prima facie presumption of loss within the bond period. Pine County v. Willard, 39 Minn. 125, 39 N. W. 71, 1 L. R. A. 118, 12 Am. St. Rep. 622; Dis-

trict, etc., v. Morris, 91 Iowa, 198, 59 N. W. 274, 51 Am. St. Rep. 338; Board, etc., v. Robinson, 81 Minn. 305, 84 N. W. 105, 83 Am. St. Rep. 374.

Because of a conflict of evidence, the assignments of error on the facts must be overruled.

[7] All of the points mentioned in the oral argument have been covered. Numerous assignments of error relating to other questions have not been examined. Enough has been said, however, to require a reversal as to the Indemnity Company, because of the refusal of its requested charge. A judgment of the district court in favor of the society against Bluitt was not appealed from, and cannot be disturbed.

We recommend that the judgment of the Court of Civil Appeals, and of the district court, against the Western Indemnity Company be reversed and the cause, as to that branch, be remanded for a new trial.

GREENWOOD and PIERSON, JJ. Judgment of the Court of Civil Appeals and the district court, as to the Western Indemnity Company, reversed and cause remanded for a new trial.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.