**EMPLOYERS' LIABILITY ASSUR. CORPO-
RATION, Limited, v. ECKERT et al.**

No. 4121.

Court of Civil Appeals of Texas. Texarkana.
Jan. 22, 1932.

Rehearing Denied Feb. 11, 1932.

W. B. Handley, of Dallas, for appellant.

Glover Johnson and McLean, Scott & McLean, all of Fort Worth, for appellees.

WILLSON, C. J. (after stating the case as above).

Appellant insists the trial court erred when he overruled its motion that he instruct the jury to return a verdict in its favor against Eckert and appellee Dolly Mingus.

■ The contention, so far as it applied to Eckert, need not be further noticed, for he is not a party to this appeal.

So far as it applied to Dolly Mingus, the contention was based on the view that it appeared she had paid Ellis in advance for the work he was to do, whereas by the terms of the contract between them she was not to pay him therefor until same was completed; and the view that Dolly Mingus had failed to comply with stipulations as follows in the bond executed by appellant: "The obligee (Dolly Mingus) shall, at the times and in the manner specified in said contract (between her and Ellis) perform all the covenants, matters and things required to be by the obligee performed; and if the obligee default in the performance of any matter or thing in this instrument, or in said contract agreed or required to be performed by the obligee, the corporation (appellant) shall thereupon be relieved from all liability hereunder. If the said principal (Ellis) shall in any manner default in the performance of any matter or thing in said contract specified to be by said principal performed, or in the event said principal shall abandon the work provided by said contract to be done by said principal, the obligee shall immediately so notify the Corporation and thereafter the Corporation shall have the right at its option to assume said contract or to assume and sublet said contract and to proceed thereunder as if no default or abandonment had occurred; and if the Corporation elect to assume or assume and sublet said contract, all moneys agreed therein to be paid said principal and which

at the time of the default are unpaid by the obligee shall thereupon belong and become payable to the Corporation, and shall be paid to it anything to the contrary in said contract notwithstanding. * * * All notices and other evidence required by this instrument to be furnished by the obligee to the Corporation shall be in writing, and shall be forwarded by registered letter addressed to the Corporation at its office in the City of Boston, Massachusetts."

 The specific respects in which appellant asserts the stipulations just set out were not complied with were that Dolly Mingus failed immediately, or within a reasonable time, to notify appellant in writing of the fact, when Ellis abandoned performance of the contract. It was undisputed in the evidence that Ellis about January 20, 1929, abandoned his undertaking and left the house "in an unfinished and uncompleted condition." It also was undisputed that notice of such abandonment was not given to appellant until on or about June 5, 1929, which was more than four months after the abandonment occurred. It is plain enough, we think, that giving notice after that lapse of time was not a compliance with the requirement in the bond that it be given "immediately." Indemnity Co. v. Masons (Tex. Com. App.) 268 S. W. 728. Dolly Mingus, however, insists that the violation of the stipulation did not operate to affect her right to the recovery she sought against appellant, because, she says, same was void by force of article 5546, R. S. 1925, declaring that "no stipulation [quoting] in a contract requiring notice to be given of a claim for damages as a condition precedent to the right to sue thereon shall ever be valid unless such stipulation is reasonable. Any such stipulation fixing the time within which such notice shall be given at a less period than ninety days shall be void." We would be inclined to follow the holding of the court in Walsh v. Methodist Church (Tex. Civ. App.) 173 S. W. 241; Id. (Tex. Com. App.) 212 S. W. 950, in effect that the statute (said Art. 5546) did not apply in cases like this one, but for the holding in Bank v. Surety Co. (Tex. Com. App.) 258 S. W. 468, and Ind. Co. v. Masons (Tex. Com. App.) 268 S. W. 728, in effect overruling the Walsh and like Cases. We feel bound on the authority of the cases last mentioned to hold that the statute did apply in the case and that the stipulation as to notice was void.

The other ground of the contention in question is predicated upon (1) the fact that by the terms of the contract between them Dolly Mingus was not to pay Ellis the $3,225, or any part thereof, he was to receive for the work until he had completed same; (2) the fact that at the time she entered into the contract Dolly Mingus made and delivered to Ellis her promissory note covering the amount she was to pay Ellis for the work, and at the same time created a mechanic's lien on the property to be improved to secure the payment of the note; and (3) the fact that it appeared the note and lien were at once transferred by Ellis to Eckert, who, by a cross-action in this suit, sought a recovery thereon.

In Bullard v. Norton, 107 Tex. 571, 182 S. W. 668, 671, the Supreme Court said, quoting: "It is well settled that sureties are only bound by the precise terms of the contract whose performance they secure, and that any material alterations in the terms of the contract without their consent will release them from liability * * * whether the change in the contract is injurious to them or favorable to them"; and added, quoting further: "There is no reason why this familiar rule should not have application to a builder's contract and bond under the same principles as apply to other characters of surety contracts."

 It cannot be doubted that payment to a contractor for work he is to do before he does it operates, as to a surety, to materially change a contract to pay after the work is done. Therefore, whether appellant's contention should be sustained or not depends, it seems, upon whether it appeared Dolly Mingus did pay Ellis for the work before he did it. Appellant insists it did so appear, and, as supporting its view, refers to the facts above recited, to wit, that Dolly Mingus, before any of the work was done by Ellis, delivered to him her promissory note for the sum she was to pay him for the work, secured by a mechanic's lien she then created on the property to be improved. Dolly Mingus insists to the contrary, and as supporting her view refers to an agreement of the parties set out in the statement of facts, that she "had paid no part of the $3,225.00, the contract price." Appellant replies, it conclusively appearing that Dolly Mingus did execute and deliver the note and create the lien to secure it as above stated, that "the (quoting) evident meaning and intent of the agreement in the statement of facts was and is that no part of the contract price had been paid in money." We think the agreement should be construed to mean what appellant insists it meant, and that its contention that it was released from liability should be sustained, if it ought to be said that the making of the note and creation of the lien to secure it operated as a payment for the work before it was done. And we think it ought to be so said, in view of the fact that it appears in the record before us that Eckert, to whom Ellis conveyed the note and lien, recovered judgment thereon against Dolly Mingus, who, not having appealed therefrom, is in the attitude of acquiescing in the correctness thereof; whereas, as we view the matter, Ellis, having abandoned the contract, plainly was not entitled to recover thereon; and Eckert, his assignee, having full notice of the terms of the contract and Ellis' abandonment of performance thereof, as appears

in the record, was in no better position to enforce payment of the note and a foreclosure of the lien made to secure it. Had Dolly Mingus not executed the note and lien to Ellis, or, having executed same, had she persisted in defending against the recovery Eckert sought and obtained against her, she would have suffered only a very small loss by reason of Ellis' abandonment of the contract, for, according to the finding of the jury, the difference between the sum she was to pay Ellis and the sum necessary to complete the work he undertook to do was only $25.

It may be that, strictly speaking, making the note and suffering the judgment Eckert obtained against her was not a payment by Dolly Mingus of the contract price, but as to appellant we do not think it should be held to have operated differently. Hunter v. Henry (Mo. App.) 181 S. W. 597; Fitch v. McDowell, 145 N. Y. 498, 40 N. E. 205; McLean v. Griot, 118 App. Div. 100, 103 N. Y. S. 129; 48 C. J. 614, and authorities there cited. In contracting as appellant did, it had a right to expect that Dolly Mingus would retain the price she was to pay Ellis for the work, as the contract provided she should, and it would be unjust to appellant to require it to make good a loss she suffered because she changed or violated terms of her contract.

It is asserted in Dolly Mingus' brief that it appeared in the evidence (1) that, when Ellis abandoned the work, Eckert attempted to complete same; (2) that money Eckert loaned Ellis "was (quoting) advanced to pay for labor and material used in the construction of the improvement"; and (3) that "Eckert (quoting further) was thus entitled to subrogation, not only as a furnisher of labor and material but also for having performed in a material part the contractual obligation of Ellis, whose duty it was to furnish these items." Galbraith-Foxworth Co. v. Long (Tex. Civ. App.) 5 S.W.(2d) 162, 169, and Constitution Indemnity Co. v. Armbrust (Tex. Civ. App.) 25 S.W.(2d) 176, are cited by Dolly Mingus as cases supporting that view. As we understand those cases, neither is like this one in its facts. The grounds of the holding in the Long Case (most like this one) are indicated by what the Court of Civil Appeals said in overruling the surety company's motion for a rehearing, as follows: "When the Fidelity Company executed the indemnity bond, its local manager must have known that Barnes [the contractor] had to be financed in his undertaking, because of the fact that the owners of the building were to pay no part of the consideration until there was a completed structure, and that the bond it was executing would become a necessary element in procuring the money to complete the contract it was guaranteeing. It is inconceivable that, without a bond guaranteeing performance by Barnes, with the mechanic's lien contract allowing the owners of the building to charge the note they had executed with any excess price in the cost of construction, any business institution would finance the contractor on the security alone of the note and mechanic's lien. The evidence of appellant's [the lender's] manager warrants the conclusion that it would not have financed Barnes but for the indemnity bond." There was no evidence adduced on the trial of the instant case showing that Eckert would not have financed Ellis as he did but for the bond appellant executed, and for that reason, even if the correctness of the other part quoted of the opinion of the Court of Civil Appeals should be conceded, the Long Case is of no value in determining this one.

We think the judgment should have been in appellant's favor as between it and Dolly Mingus. It will be reversed, and judgment will be here rendered that Dolly Mingus take nothing by her suit against it. The judgment will not be disturbed in other respects.