## MINGUS v. EMPLOYERS' LIABILITY ASSUR. CO., Limited.

### No. 170[—6222.

Commission of Appeals of Texas, Section A. Nov. 28, 1933.

McLean, Scott & Sayers and Glover C. Johnson, all of Fort Worth, for plaintiff in error.

W. B. Handley, of Dallas, for defendant in error.

CRITZ, Judge.

The opinion of the Court of Civil Appeals, speaking through the late Judge Wilson, makes a very fair and complete statement of the facts and issues of this case. For a complete statement we refer to and adopt such opinion. 46 S.W.(2d) 464, 466. For the purposes of this opinion we make the following statement:

In so far as this appeal is concerned, this case grew out of a building contract between Dollie Mingus and D. E. Ellis. It appears that on December 28, 1928, these two parties entered into a written contract whereby Ellis agreed to furnish the labor and material necessary to remodel and rebuild, according to certain plans and specifications, a certain house owned by Mingus. The consideration for the completed work was $3,225, to be paid when the contract was completed. The contract also provided that the building was to be completed within 60 working days. Employers' Liability Corporation, Limited, was the surety on the bond made by Ellis to secure Mingus in the performance of this contract.

It further appears from the record that, at the time Mingus and Ellis executed the above builder's contract, which contract was secured by the bond above mentioned, she (Mingus) at the same time made and delivered to Ellis a negotiable promissory note covering and representing the full amount of the consideration for the above builder's contract. According to its express terms, this note matured 60 days from its date. It also provided for interest and attorney's fees. At the same time the note was executed, Mingus also executed and delivered to Ellis a separate mechanic's lien contract on the property in question here to secure such note. The above note was transferred in due course to one N. Eckert. The result of this transaction will later appear.

Reverting to the bond executed by the assurance corporation, it is here noted that such bond contained the following stipulation: "3. If said Principal shall in any manner default in the performance of any matter or thing in said contract specified to be by said Principal performed, or in the event said Principal shall abandon the work provided by said contract to be done by said Principal, the Obligee shall immediately so notify the Corporation and thereafter the Corporation shall have the right at its option to assume said contract or to assume and sublet said contract and to proceed thereunder as if no default or abandonment had occurred; and if the Corporation elect to assume or assume and sublet said contract, all moneys agreed therein to be paid said principal and which at the time of the default are unpaid by the Obligee shall thereupon belong and become payable to the Corporation, and shall be paid to it, anything to the contrary in said contract notwithstanding."

Ellis defaulted on his contract, and failed to complete it in the manner agreed on therein. This suit followed, based on the above bond.

By various assignments the assurance corporation contends that the facts above recited, which are undisputed, constitute, in law, a defense to the liability asserted against it on the bond. We think such contention should be sustained.

■ It is the settled law of this state that sureties are bound only by the precise terms of the contract whose performance they secure, and any material alteration or change in its terms, whether injurious to it or not, operates to discharge the surety. Bullard v. Norton, 107 Tex. 571, 182 S. W. 668. This holding is in exact accord with the opinion of the Court of Civil Appeals in the instant case.

■ It is also the settled law of this state that, where a contract secured by a bond stipulates for a retainage of the contract price, or a percentage thereof in order to secure the faithful performance of the work, the payment of such retainage before it is due is a material alteration of the contract, and operates to discharge the surety. Bullard v. Norton, supra. It seems to us that,

if it is a violation of the surety contract to actually so pay the stipulated retainage in violation of the contract secured by a bond, it is equally a violation to make a binding contract to do so.

■ In the case at bar, the assurance corporation signed a bond to secure the faithful performance of a building contract, and such contract expressly provided that the consideration for the building should be paid by the owner to the contractor at the completion of the work. The contract provided further that the work should be completed within 60 working days. It is thus evident that under the terms of the contract secured by the bond the consideration or contract price of the building was not due or to be paid until the building was fully completed. The time of such completion was obviously somewhat indefinite. The maximum time provided by the contract was 60 working days. Thus under the building contract the time of payment might be 60 days, and it might be more or less than that time, depending on weather conditions or other conditions that might cause or excuse delay. When Mingus executed the negotiable promissory note in question, which expressly represented the consideration for the contract under discussion, and made it payable on a fixed date of 60 days from its date, she by express contract materially changed the due date of the contract price of the building from the due date fixed by the contract which the assurance corporation became security for. This was certainly a material change of the contract, and operated in law to release the surety whether it actually injured it or not. Bullard v. Norton, supra.

■ We are also of the opinion that the transaction above detailed and its results, in so far as the surety is concerned, amounts in law to the payment of the consideration for the contract which the assurance corporation became surety for in advance of the time fixed by the contract. This is also the holding of the Court of Civil Appeals. In this connection we quote with approval the following from that opinion:

"It cannot be doubted that payment to a contractor for work he is to do before he does it operates, as to a surety, to materially change a contract to pay after the work is done. Therefore, whether appellant's contention should be sustained or not depends, it seems, upon whether it appeared Dolly Mingus did pay Ellis for the work before he did it. Appellant insists it did so appear, and, as supporting its view, refers to the facts above recited, to wit, that Dolly Mingus, before any of the work was done by Ellis, delivered to him her promissory note for the sum she was to pay him for the work, secured by a mechanic's lien she then created on the property to be improved. Dolly Mingus insists to the contrary, and as supporting her view refers to an agreement of the parties set out in the statement of facts, that she 'had paid no part of the $3,225.00, the contract price.' Appellant replies, it conclusively appearing that Dolly Mingus did execute and deliver the note and create the lien to secure it as above stated, that 'the (quoting) evident meaning and intent of the agreement in the statement of facts was and is that no part of the contract price had been paid in money.' We think the agreement should be construed to mean what appellant insists it meant, and that its contention that it was released from liability should be sustained, if it ought to be said that the making of the note and creation of the lien to secure it operated as a payment for the work before it was done. And we think it ought to be so said, in view of the fact that it appears in the record before us that Eckert, to whom Ellis conveyed the note and lien, recovered judgment thereon against Dolly Mingus, who, not having appealed therefrom, is in the attitude of acquiescing in the correctness thereof; whereas, as we view the matter, Ellis, having abandoned the contract, plainly was not entitled to recover thereon, and Eckert, his assignee, having full notice of the terms of the contract and Ellis' abandonment of performance thereof, as appears in the record, was in no better position to enforce payment of the note and a foreclosure of the lien made to secure it. Had Dolly Mingus not executed the note and lien to Ellis, or, having executed same, had she persisted in defending against the recovery Eckert sought and obtained against her, she would have suffered only a very small loss by reason of Ellis' abandonment of the contract, for, according to the finding of the jury, the difference between the sum she was to pay Ellis and the sum necessary to complete the work he undertook to do was only $25.

"It may be that, strictly speaking, making the note and suffering the judgment Eckert obtained against her was not a payment by Dolly Mingus of the contract price, but as to appellant we do not think it should be held to have operated differently. Hunter v. Henry (Mo. App.) 181 S. W. 597; Fitch v. McDowell, 145 N. Y. 498, 40 N. E. 205; McLean v. Griot, 118 App. Div. 100, 103 N. Y. S. 129; 48 C. J. 614, and authorities there cited. In contracting as appellant did, it had a right to expect that Dolly Mingus would retain the price she was to pay Ellis for the work, as the contract provided she should, and it would be unjust to appellant to require it to make good a loss she suffered because she changed or violated terms of her contract."

We recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, Chief Justice.

The judgment of the Court of Civil Appeals is affirmed, as recommended by the Commission of Appeals.